**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**AMERICAN IMMIGRATION COUNCIL,**

    **Plaintiff,**

       **v.**

**UNITED STATES DEPARTMENT OF**
**HOMELAND SECURITY,** *et al.*,

    **Defendants.**

**Civil Action No. 12-856 (JEB)**

---

<u>**MEMORANDUM OPINION**</u>

      Plaintiff American Immigration Council brought this action under the Freedom of

Information Act seeking records on immigrants' access to legal counsel during their interactions

with U.S. Immigration and Customs Enforcement authorities.  Defendant ICE (a component of

the Department of Homeland Security, the second Defendant) eventually produced nearly 8,000

pages of responsive records, withholding and partially redacting hundreds of pages.  In its suit,

Plaintiff challenges the sufficiency of Defendants' search for responsive records, as well as the

propriety of many of their withholdings.  Arguing they have complied with their obligations,

Defendants now move for summary judgment on both issues.  As to the first, the Court

concludes that an issue of material fact exists as to whether Defendants conducted a sufficiently

exhaustive search to satisfy FOIA.  Having also reviewed Defendants' justifications for their

various withholdings and having examined their redactions *in camera*, the Court further finds

that Defendants have not provided sufficient information for it to determine whether any of the

withholdings are proper.  Denial of Defendants' Motion for Summary Judgment thus results.

## I.      Background

In March 2011, the American Immigration Council (AIC) submitted the following FOIA

request concerning individuals' access to legal counsel during their interactions with U.S.

Immigration and Customs Enforcement authorities:

> [A]ny and all records which have been prepared, received,
> transmitted, collected and/or maintained by the U.S. Department of
> Homeland Security and/or U.S. Immigration and Customs
> Enforcement (ICE), whether issued or maintained by ICE
> Headquarters offices (including but not limited to the Office of the
> Assistant Secretary (OAS), Enforcement and Removal Operations
> (ERO), Homeland Security Investigations (HIS) [*sic*],
> Management and Administration, Office of the Principal Legal
> Advisor (OPLA), and the Office of Detention Policy and Planning
> (ODPP), including any divisions, subdivisions or sections therein);
> ICE field offices, including any divisions, subdivisions or sections
> therein; local Offices of Chief Counsel; and/or any other ICE
> organizational structure; and which relate or refer in any way to
> any of the following:
> - Attorneys' ability to be present during their clients'
>   interactions with ICE;
> - What role attorneys may play during their clients'
>   interactions with ICE;
> - Attorney conduct during interactions with ICE on behalf of
>   their clients;
> - Attorney appearances at ICE offices or other facilities.

Compl., Exh. A (Letter from Emily Creighton, AIC, to FOIA Office, U.S. Immigrations and

Customs Enforcement (March 14, 2011)) at 1 (footnote omitted).  The request "include[d], but

[was] not limited to" thirteen specific types of records.  Id. at 1-3.

After more than a year without receiving any records and three unsuccessful

administrative appeals of actual and constructive denials of its request, AIC concluded that it had

exhausted its administrative remedies and filed suit in this Court.  See Compl., ¶¶ 15-24; see also

5 U.S.C. § 552(a)(6)(A)-(C) (under normal circumstances, agency must make an initial

determination within 20 days, with another 20 days allotted for administrative appeal; where the

agency exceeds its time limits, requester will be deemed to have exhausted administrative remedies).

Two and a half months after AIC filed its Complaint with this Court, ICE processed 1,084 pages of responsive documents and produced them. See Joint Motion to Stay These Proceedings, ¶ 4. Shortly thereafter, ICE "identified an additional 6,000 or so pages of documents" that it deemed potentially responsive to AIC's request. Id., ¶ 5. The parties jointly requested a brief stay of the proceedings to allow ICE to review and produce additional documents on a rolling basis. Id., ¶¶ 6-7. The Court granted this request on August 20, 2012.

ICE then processed 6,906 pages of further records in five rolling productions, withholding portions of the records pursuant to various FOIA exemptions. See Mot., Attach. 1 (Defendant Statement of Material Facts (SMF)), ¶¶ 20-21; Opp., Attach. 1 (Plaintiff Response to Def. SMF), ¶¶ 20-21. ICE also provided AIC with a summary Vaughn Index for the purpose of identifying information in its withholdings. See Def. SMF, ¶ 23.

On January 9, 2013, the parties entered into a joint stipulation acknowledging AIC's receipt and review of the 6,906 additional pages of documents, many of which ICE had redacted in whole or in part pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E). See Mot., Exh. 2 (Joint Stipulation), ¶¶ 1-2. AIC agreed that it would not challenge ICE's whole or partial redactions for the following page ranges: 0216-0221, 0242-0432, 0449-0518, 0550-0581, 0584-0620, 0658-0724, 0748-0781, 0803-0816, 0821-0822, 0830-0840, 0845-0847, 0855, 0859, 0890, 0899, 0918-0919, 0924, 0934, 0948-0962, 0967-0984, and 1085-6906. See id., ¶¶ 2-3.

On January 25, 2013, Defendants filed a Motion for Summary Judgment, claiming that they had conducted a reasonable search in response to Plaintiff's request, produced all responsive documents, and properly withheld certain records pursuant to various FOIA exemptions. See

3

Mot. at 7-21.  AIC contests the Motion, arguing that Defendants failed to demonstrate that their search was adequate, that the descriptions of their withholdings are insufficient as a whole, and that they improperly withheld various documents.  See Opp. at 5-33.

On April 25, this Court ordered Defendants to produce the remaining disputed documents for *in camera* review.  Thereafter, Defendants produced the documents, which number nearly 600 pages.  The Court has since reviewed the redactions along with Defendants' various justifications.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a

court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" U.S. Dep't of Justice v. Reporters Com. for the Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III.    Analysis

Plaintiff contends that Defendants erred in two essential areas. First, AIC claims that ICE failed to conduct an adequate search for responsive records. See Opp. at 7-16. Second, AIC asserts that ICE improperly withheld multiple records pursuant to several FOIA exemptions. See id. at 16-35. Given that ICE has demonstrated neither the adequacy of its search nor the propriety of its withholdings, the Court cannot grant Defendants' Motion on either ground.

### A. Adequacy of Search

FOIA requires government agencies to describe their searches in sufficient detail for a court to determine whether the search was sufficiently exhaustive to satisfy the Act. Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 890 (D.C. Cir. 1995);

Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  To describe its search in this

case, ICE relies on two declarations from its Deputy FOIA Officer, Ryan Law.  See Mot., Exh. 1

(Declaration of Ryan Law); Reply, Exh. 1 (Supplemental Declaration of Ryan Law).  Those

declarations, ICE contends, demonstrate that the search it undertook was reasonable.  They

describe, *inter alia*, the ICE departments searched, the employees who conducted the searches,

the "search terms utilized," and "the databases, physical spaces, and other computer files

searched."  Reply at 7-8.

Plaintiff raises several objections to ICE's search, which it argues preclude summary

judgment on this issue.  These objections fall into three categories: First, that ICE failed to

explain why it excluded certain departments and local field offices from its search, see Opp. at

10-12, Sur-Reply at 5; second, that ICE has not described its search in sufficient detail to allow

this Court to assess its reasonableness, see Opp. at 5-12; Sur-Reply at 6-7; and, third, that

countervailing evidence indicates the actual search ICE conducted was not adequate.  See Reply

at 12-16; Sur-Reply at 7.

As the Court ultimately finds the first two objections persuasive, it concludes that an

issue of material fact remains as to whether the agency's search was adequate.

1.  *Selection of Offices & Files to Search*

Plaintiff first argues that Defendants have failed to explain why they have not searched

certain offices, sub-offices, and field offices that are likely to contain responsive records.  It

additionally complains that, within those departments ICE did search, ICE improperly omitted

filing systems that are likely to contain responsive records.

As a first step, "[u]pon receiving Plaintiff's FOIA request . . . the ICE FOIA Office

reviewed the request and determined that based on the subject matter of the FOIA request that

the following offices and divisions as likely possessing records responsive [*sic*]."  Law Decl.,

¶ 20.  Indeed, this appears to be the normal practice of the agency: "When the ICE FOIA Office

receives a FOIA request, its first step is to identify which program offices within ICE are most

likely to possess records responsive to that request and to initiate searches within those program

offices."  Id., ¶ 7.  Similarly, in deciding which filing systems within a department to search, the

agency explains: "These terms and locations were used as they were determined by the person

familiar with the records within [an ICE department] to be relevant to the request and reasonably

calculated to uncover relevant documents."  Suppl. Law Decl., ¶ 37; see also id. ¶¶ 27, 43.

     In order for such a methodology to be sufficient, ICE would, at a minimum, have to aver

that it has searched all files likely to contain relevant documents.  Agencies regularly make such

attestations when they use similar methods of selecting which departments and files to search.

For example, in Brehm v. Dep't of Def., 593 F. Supp. 2d 49 (D.D.C. 2009), the government

agency selected two filing systems that it determined were "likely to contain responsive records."

Id. at 50.  The defendant, however, additionally averred that "it is unlikely that other CIA

directorates would possess records responsive to Plaintiff's request."  Id.; see also Nation

Magazine, 71 F.3d at 891 (agency attested that it had "made a comprehensive search through all

of its records systems where [records] responsive to the Plaintiffs request could conceivable [*sic*]

be maintained and failed to locate any [responsive] records").

     Where the government has not made such an attestation, courts have typically found that

an issue of material fact exists as to the adequacy of the search.  In Jefferson v. Bureau of

Prisons, No. 05-848, 2006 WL 3208666 (D.D.C. Nov. 7, 2006), for example, the court found the

FBI's search inadequate because its declaration did not "aver that the FBI searched all files likely

to contain responsive records."  Id. at *6.  Likewise, in Bonaparte v. U.S. Dept. of Justice, 531 F.

Supp. 2d 118 (D.D.C. 2008), the court found the search inadequate in part because the

Defendants had not averred that "all files likely to contain responsive materials . . . were

searched." Id. at 122.  And in Maydak v. U.S. Dep't of Justice, 362 F. Supp. 2d 316 (D.D.C.

2005), the court lamented that "no one avers, and the record does not otherwise permit the

inference that all files likely to contain responsive records were searched." Id. at 326.

Here, similarly, Defendants have not indicated that all those offices and records systems

likely to contain responsive records have been searched.  ICE has only stated that it identified

certain offices as "most likely to possess records responsive to [Plaintiff's] request."  Law Decl.,

¶ 7; see also id., ¶ 20.  The D.C. Circuit rejected just such an attestation in Oglesby, 920 F.2d at

68.  There, the defendant selected the departments and filing systems it searched in much the

same manner that ICE did in this case: "Based upon the information contained in [the plaintiff's]

letter, and consistent with customary practice and established procedure, a search was initiated of

the Department record system most likely to contain the information which had been

requested . . . namely, the Central Records." Id.  The plaintiff complained that in response to his

FOIA request, "the agency only searched the record system 'most likely' to contain the requested

information." Id.  The D.C. Circuit held that, while an agency need not search every one of its

record systems, a "reasonably detailed affidavit . . . averring that all files likely to contain

responsive materials . . . were searched, is necessary to afford a FOIA requester an opportunity to

challenge the adequacy of the search and to allow the district court to determine if the search was

adequate in order to grant summary judgment." Id.  Such an assurance is necessary because

> the agency cannot limit its search to only one record system if
> there are others that are likely to turn up the information requested.
> It is not clear from [the government's] affidavit that the Central
> Records system is the only possible place that responsive records
> are likely to be located. At the very least, [the government] was

> required to explain in its affidavit that no other record system was
> likely to produce responsive documents.

Id. (emphasis original).

While this averment may seem a technical requirement, the facts of this case demonstrate its importance.  Plaintiff argues that certain offices, sub-offices, and filing systems should have been searched, see Opp. at 9, Sur-Reply at 5, but the Court cannot begin to analyze such a contention until it knows ICE's position on whether any of those locations have potentially responsive documents.

### 2.  *Description of Search*

For those departments and files that the agency did search, ICE has similarly failed to carry its burden.  The government must describe a search with sufficient detail that the reviewing court can determine whether the search was reasonable.  See Nation Magazine, 71 F.3d at 890 ("To show reasonableness at the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate."); Oglesby, 920 F.2d at 68 ("A reasonably detailed affidavit, setting forth the search terms and the type of search performed … is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment.").

Here, Defendants' description is not sufficiently detailed.  Law's supplemental declaration describes searches of particular databases without explaining what those databases are and the documents they contain.  For example, it details a search of the "ERO Resource Library," but does not explain what kinds of documents that database includes.  See Suppl. Law Decl., ¶ 42.  Elsewhere, it refers to the "ICE OPLA District Court Litigation Division Litigation Database," without explaining what records the database contains.  Id., ¶ 16.  At one point, the

declaration simply refers to "a database search" without providing even the name of the database. Id., ¶ 20. For OPLA, ERO, and ODPP, the supplemental declaration describes searches of network "Shared Drive[s]" without explaining what employees, departments, or field offices have access to those drives. See id., ¶¶ 11, 30, 36, 40. The explanation dedicated to the search of ODPP refers simply to a "computer search of the 'Documents' folder," but does not explain where the folder was located or who had access to it. Id., ¶ 41. Paragraph 34 refers to a "desktop/laptop computer search," but does not explain whose computers were actually searched. Id. at 34.

At several points, the supplemental declaration describes searches of the "Email Outlook program," but does not explain what is included in this "program." See id., ¶¶ 13, 21, 26, 31. In other words, the declaration does not make clear whether these searches encompassed all emails from all employees within a particular division, or whether they included only certain employees thought to have relevant information. In addition, the original declaration describes the general system for archived emails, see Law Decl., ¶ 15 ("Individual archives of emails are searched by the individual employees where those employees have identified individual archives containing potentially responsive documents."), but the searches of the "Email Outlook program" appear to be distinct from the searches of "archived emails" that Law describes in his supplemental declaration. Compare, e.g., Suppl. Law Decl., ¶ 13 (describing an "'instant search' of the Email Outlook program"), with id., ¶ 17 (referring to "a search of the archived emails of the individual conducting the search").

In the same way, Defendants failed to adequately describe the searches of three databases that apparently returned responsive records. Defendants retrieved records "responsive to Plaintiff's FOIA request" from three of its recordkeeping systems: the "ICE External

Investigations Records," the "Immigration and Enforcement Operational Records," and the

"Alien Medical Records."  Law Decl., ¶ 16.  While Law's first declaration does describe the

nature of those records systems in some detail, see id.,¶ 16(a)-(c), it does not discuss the searches

performed on those record systems.  The supplemental declaration, however, which ICE

ostensibly provided to address this and other omissions, see Reply at 7, makes no reference to

any of the three records systems mentioned in Law's first declaration.

    Without a more detailed description of the systems that the agency searched, a question

of material fact exists as to whether the search was adequate.  Additionally, a more detailed

description of the search will help the Court evaluate some of Plaintiff's more specific criticisms.

For instance, Plaintiff points out that the search terms the agency employed seem inconsistent

and incomplete.  See Sur-Reply at 6.  The Court will not venture an opinion on this claim

without a better understanding of what files were being searched.  It does note, however, that the

relevance of some of these search terms, such as "Jena," "SPC," and RA Memos," is not

immediately apparent.  See Suppl. Law Decl., ¶ 30.  More explanation will prove of future

assistance to the Court.

### 3. *Countervailing Evidence*

    Plaintiff additionally points to "countervailing evidence" that, it argues, indicates that

ICE did not perform an adequate search.  See Opp. at 12-16.  Although, as just discussed, the

Court does not have enough information to evaluate the adequacy of the overall search, it does

not agree that the countervailing evidence Plaintiff has identified, on its own, demonstrates that

the search was inadequate.

    Plaintiff relies on two types of countervailing evidence.  First, it identifies documents that

AIC knows existed at one time but that ICE did not provide in response to Plaintiff's FOIA

request.  For example, ICE has held several meetings with immigration advocacy groups – *e.g.*,

the American Immigration Lawyers Association – concerning the role of counsel.  See Opp.,

Attach. 6 (Declaration of Robert Deasy), ¶ 3.  After each meeting, the Lawyers Association sent

"meeting minutes" to ICE, to which ICE responded in writing.  See id., ¶ 3.  In several of these

meeting minutes, ICE responded to questions about access to counsel.  Plaintiffs complain,

though, that in response to their FOIA request, Defendant turned over only "limited

correspondence relating to such meetings."  Opp. at 12.  Similarly, Plaintiff has provided

affidavits from several immigration rights advocates attesting to written correspondence they

have conducted with ICE officials regarding access to attorneys, which correspondence was not

included in the materials ICE provided to Plaintiff.  See id. at 12-13.

Second, Plaintiff contends that some of the documents that ICE did provide contain

references to other relevant documents that the agency did not turn over.  Plaintiff cites examples

of records referring to, for example, "talking points," "PowerPoint" presentations, or "policies."

Several emails also refer to "documents" and "memos."  Id. at 14.  An "Operation Plan" that

Defendants disclosed refers to four attachments, but the attachments are not included.  Id. at 14.

In general, identifying a handful of documents that the agency failed to uncover does not,

in itself, demonstrate that the search was inadequate.  See Boyd v. Criminal Div. of U.S. Dep't of

Justice, 475 F.3d 381, 391 (D.C. Cir. 2007) ("[T]he fact that a particular document was not found

does not demonstrate the inadequacy of a search."); Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir.

2004) ("the agency's failure to turn up a particular document … does not undermine the

determination that the agency conducted an adequate search for the requested records").  Nor is

the government required to examine every document that is cross-referenced by the records that

have been reviewed.  In Steinberg v. U.S. Dep't of Justice, 23 F.3d 548 (D.C. Cir. 1994), the

plaintiff complained that the government had not examined six files that were mentioned in several disclosed documents.  Id. at 552.  The D.C. Circuit held that FOIA does not require agencies to track down every cross-referenced record in the documents it examines: "[M]ere reference to other files does not establish the existence of documents that are relevant to appellant's FOIA request."  Id.

The existence of particular undisclosed documents is not conclusive because any individual document may have been lost, destroyed, or not retained in the first place.  See Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) (The "adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.  After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them.") (internal citations omitted); see also Porter v. CIA, 778 F. Supp. 2d 60, 69 (D.D.C. 2011).

True, in some instances, courts have found that the government's failure to hand over specific documents indicates that the search was inadequate.  These cases, however, tend to involve instances where the existence of a particular document indicates that the agency failed to search a particular category of files or a particular department's records.  For instance, in Wolf v. CIA, 357 F. Supp. 2d 112 (D.D.C. 2004), aff'd in part, rev'd in part on other grounds, 473 F.3d 370 (D.C. Cir. 2007), the plaintiff sought all documentation in the FBI's possession regarding the activities of a particular individual.  Id. at 114. The plaintiff independently produced an internal FBI memorandum indicating that the individual's case file was being closed and that his subsequent activities would be reported in a file called "Political Situation in Colombia—Foreign Political Matter."  Id. at 119.  The court agreed that the FBI should have searched this "Political Situation" file and that the agency's failure to do so rendered summary judgment improper.  Id.

Likewise, in <u>Campbell v. U.S. Dep't of Justice</u>, 164 F.3d 20 (D.C. Cir. 1998), the files that the

FBI provided in response to plaintiff's FOIA request alluded to records contained in two

additional record systems, an electronic surveillance index, and "tickler" files.  <u>Id.</u> at 27.  The

court thus held that the FBI should have searched those additional record systems.  <u>Id.</u> at 28; <u>see

also</u> <u>Iturralde</u>, 315 F.3d at 315 (failure to disclose a particular document only indicates an

inadequate search under certain circumstances – *e.g.*, the government "failed to search particular

offices or files where the document might well have been found"; "failed or refused to interview

government officials for whom there was strong evidence that they might have been helpful in

finding the missing documents"; or "ignored indications in documents found in its initial search

that there were additional responsive documents elsewhere") (citations omitted).

Unlike the documents discussed in <u>Wolf</u> and <u>Campbell</u>, the records that Plaintiff refers to

here do not demonstrate that the search was inadequate.  Plaintiff has not provided evidence to

demonstrate that ICE saved the meeting minutes that immigrant rights advocates sent to them or

that ICE personnel retained their correspondence with those advocates.  The evidence does not

reveal a particular category of files or a particular department whose records the agency failed to

search.  Plaintiff's suggestion that records of these correspondences exist is thus largely

speculative.

In summary, the Court holds that issues of material fact exist as to the adequacy of ICE's

search.  The agency must, in the future, aver that all departments and files likely to contain

responsive records were searched and must describe its search procedures in sufficient detail for

the Court to determine whether the search was reasonable.  Summary judgment on this issue will

be denied.

B.  Withholdings Under Various FOIA Exemptions

FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Nine categories of information are exempt from FOIA's broad rules of disclosure.  5 U.S.C. § 552(b)(1)-(9).  These exemptions are to be narrowly construed, see Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976), and the reviewing court must bear in mind that FOIA mandates a "strong presumption in favor of disclosure."  U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991); Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002).  This Court, accordingly, can compel the release of any records that do not satisfy the requirements of at least one exemption.  See U.S. Dep't of Justice v. Reporters Com. for Freedom of the Press, 489 U.S. 749, 755 (1989).

Plaintiff argues that ICE's withholdings are deficient in four respects.  First, AIC maintains that ICE's Vaughn Index and other explanations of its withholdings are insufficient as a whole, and that summary judgment should be rejected on the overall ground that Defendants have not carried their evidentiary burden.  See Opp. at 19-22.  Second, Plaintiff takes issue with specific categories of withholdings, arguing that ICE has not thoroughly explained how particular FOIA exemptions apply to individual documents.  See id. at 22-33.  Third, Plaintiff contests withholdings and redactions for which no exemptions have been claimed and that have been marked as redacted without further explanation.  See id. at 21.  Fourth and finally, Plaintiff asserts that even if ICE has appropriately described its withholdings, it has nevertheless failed to release "reasonably segregable portion[s]" of its exempted records.  Id. at 33-35.  The Court will address each of these issues in sequence.

1.   *Overall Sufficiency of Documentation and Explanations*

FOIA was drafted with the objective of affording the public maximum access to most government records.  See Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973).  The government, as a result, bears the burden of demonstrating that at least one exemption applies.  See id.  In order to assist a court in its *de novo* review of the withholdings and to allow the party seeking access to documents to engage in effective advocacy, the government must furnish "detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed.'"  Campbell, 164 F.3d at 30 (quoting King v. U.S. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987)).  This allows for "as full a public record as possible, concerning the nature of the documents and the justification for nondisclosure."  Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979).  Time and again, courts in this Circuit have stressed that the government cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or offer "far-ranging category definitions for information."  King, 830 F.2d at 221; see, e.g., Campbell, 164 F.3d at 30 (emphasizing that an agency's explanations will not suffice if they "'are conclusory, merely recit[e] statutory standards, or if they are too vague or sweeping'") (quoting Hayden, 608 F.2d at 1387).

While FOIA's individual exemptions impose their own tailored evidentiary burden, as a starting point, the government must meet five overarching requirements for each withholding.  See King, 830 F.2d at 224.  The government must:

> (1) [I]dentify the document, by type and location in the body of documents requested; (2) note that [a particular exemption] is claimed; (3) describe the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemption's purpose; (4) explain how this material falls within one or more of the categories . . . ; and [if the

> exemption requires a showing of harm] (5) explain how disclosure
> of the material in question would cause the requisite degree of
> harm.

Id.

In circumstances where an in-depth description of a withholding would risk disclosure of sensitive information, and particularly where a confidential source might be compromised, the government may supplement its explanations with non-public affidavits and other documents for *in camera* review by the court.  See Simon v. Dep't of Justice, 980 F.2d 782, 784 (D.C. Cir. 1992) ("in camera review . . . is the best way to assure both that the agency is entitled to the exemption it claims and that the confidential source is protected").  *In camera* review, however, is "not a substitute for the government's obligation to provide detailed public indexes and justifications whenever possible." Lykins v. U.S. Dep't of Justice, 725 F.2d 1455, 1463 (D.C. Cir. 1984); see also PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 253 (D.C. Cir. 1998) ("*[I]n camera* review is generally disfavored," and is "not a substitute for the government's obligation to justify its withholding in publicly available and debatable documents.") (internal citations omitted).  As the D.C. Circuit noted in Lykins, the government's documentary obligations not only enable the reviewing court to make an informed and accurate determination, but they also allow the adversary system to operate effectively and encourage transparency by "forc[ing] the government to analyze carefully any material withheld."  725 F.2d at 1463.  Admittedly, this evidentiary burden is likely to create significant costs for government agencies as they respond to FOIA requests; however, "[t]he costs must be borne . . . if the congressional policy embodied in FOIA is to be well served."  Senate of the Com. of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 587 (D.C. Cir. 1987).

In this case, ICE has fallen well short of meeting its obligations and has instead shifted the burden of analyzing nearly 600 pages of withheld documents to the shoulders of this Court. More specifically, at the Court's request, Defendants have submitted the disputed documents for *in camera* review, supplementing them with declarations and briefs that are laden with generalized, categorical descriptions of the contents and conclusions that do little more than parrot established legal standards. See, e.g., Mot. at 9-20 (broad, categorical descriptions of documents using statutory language and legal conclusions); Law Decl., ¶¶ 37-57 (use of summary categories without any individual descriptions of documents); Reply at 9-18 (same). Defendants have also provided an equally unsatisfactory "summary" Vaughn Index, which they claim reflects "customary practice, particularly in cases . . . where a large number of potentially responsive documents [are] identified." Law Decl., ¶ 36. The Index purports to convey all necessary detail in only four pages comprising six rows of vague description. See Vaughn Index at 1-4 (multiple records assigned to sweeping categories such as "[a]ll documents containing commonly withheld techniques and procedures of law enforcement," or "[e]mails and draft discussions regarding NGO questions").

Defendants provide no authority to show that submission of a "summary" Vaughn Index, without more, is either a customary or acceptable means of discharging their evidentiary burden. Indeed, consistent precedent demonstrates that the contrary is true. As the Vaughn Court itself cautioned: "[I]t is unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party" who is familiar with the documents and who seeks to withhold them. 484 F.2d at 825.

While the form of the government's explanations may vary, the substance must meet a consistent standard. If the government chooses to submit a short Vaughn Index containing

abbreviated descriptions, it must supplement the index with detailed affidavits that do more than

merely repeat the same generalized categorization of content.  See Judicial Watch, Inc. v. FDA,

449 F.3d 141, 146 (D.C. Cir. 2006); see also Coastal States Gas Corp. v. Dep't of Energy, 617

F.2d 854, 861 (D.C. Cir. 1980) (index identifying "who wrote the memorandum, to whom it was

addressed, its date, and a brief description of the memorandum," accompanied by affidavits

drafted in "conclusory terms" deemed insufficient).  While the government need not furnish

repetitive descriptions of the same type of document and may describe commonalities among its

withholdings, it must avoid resorting to explanation in generalities.  See Judicial Watch v. FDA,

449 F.3d at 147.  A "document-by-document" description in the Vaughn Index may not always

be necessary, particularly when the withholdings comprise multiple, duplicative records and

when the government's supporting affidavits are "sufficiently detailed to allow the district court

to fairly evaluate" the application of a claimed exemption to distinct categories of documents.

See Gallant v. NLRB, 26 F.3d 168, 173 (D.C. Cir. 1994); see also Landmark Legal Found. v.

IRS, 267 F.3d 1132, 1138 (D.C. Cir. 2001) ("It is not the agency's fault that thousands of

documents belonged in the same category, thus leading to exhaustive repetition.").

    Indeed, in certain past FOIA cases, this Court has refrained from demanding exhaustive

descriptions of each redacted document where so doing would "exalt form over substance."

Smith v. Dep't of Labor, 798 F. Supp. 2d 274, 281 (D.D.C. 2011).  Such findings, however, have

been limited to occasions when the government agency has only redacted small portions of a

limited number of contested records, and the non-redacted content has provided more than

enough detail for both plaintiff and judicial review.  See id.  This case is not analogous in any

respect.  A substantial number of ICE documents that remain in contention have either been

heavily redacted or withheld in their entirety.  In general, the text that has been made public does

not suffice to allow Plaintiff to glean adequate context or engage in the type of advocacy that

FOIA seeks to encourage.  Of perhaps greater concern, ICE's Vaughn Index does not offer a

useable point of reference to negotiate nearly 600 pages of withholdings, a problem that is

discussed in further detail in relation to each claimed FOIA exemption.  See Sections

III(B)(2)(a)-(b), *infra*.

This Court, consequently, holds that Defendants' Vaughn Index and explanations of the

withholdings are insufficient as a whole.  On these grounds alone, the Court must deny the

Motion for Summary Judgment as to ICE's withholdings.  If ICE does not produce the contested

records, it must submit revised documentation that is sufficiently detailed and comprehensive to

meet the evidentiary standards set out in King, 830 F.2d at 224, as well as the exemption-specific

standards, which are discussed in detail in the sections that follow.

## 2. *Applicability of Specific Exemptions*

Plaintiff's challenges to specific withholdings turn principally on the applicability of

FOIA Exemptions 5 and 7(E); AIC no longer contests ICE's withholdings under Exemptions 6

and 7(C).  See Opp. at 22-32; Reply at 14-16. The Court, consequently, need not decide whether

Defendants have improperly withheld portions of documents described in the Vaughn Index (at

1) as containing "personally identifiable information."  See Hopkins v. Women's Div., Gen. Bd.

of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit

that when a plaintiff files an opposition to a dispositive motion and addresses only certain

arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to

address as conceded."), aff'd 98 F. App'x 8 (D.C. Cir. 2004) The Court will thus consider

Exemptions 5 and 7(E) in turn.

a.   Exemption 5

FOIA Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Withholdings are restricted to "those documents, and only those documents, normally privileged in the civil discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 798-99 (1984).  In contrast to disclosures in that context, the needs of a particular plaintiff are irrelevant to a court's determination of whether a particular communication is exempt from disclosure under (b)(5).  Martin v. Office of Special Counsel, Merit Sys. Prot. Bd., 819 F.2d 1181, 1184 (D.C. Cir. 1987) (citing Sears, Roebuck, 421 U.S. at 149).

Exemption 5 encompasses three distinct components relevant here – namely, the deliberative-process privilege (sometimes referred to as "executive privilege"), the attorney work-product privilege, and the attorney-client privilege.  Am. Immigration Council v. U.S. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216 (D.D.C. 2012).  In addition to meeting the distinct evidentiary burden for each relevant privilege of (b)(5), the government must demonstrate that its withholdings satisfy the threshold requirement of "inter-agency or intra-agency memorandums."  5 U.S.C. § 552(b)(5).  The Court will address this threshold requirement first and then move to each of the three privileges.

i.   Inter-Agency or Intra-Agency Memoranda

The types of records that qualify as inter-agency or intra-agency memoranda under Exemption 5 are not limited to exchanges between government personnel and may also include deliberative discussions with private liaisons acting in the capacity of consultants and providing input at the behest of the government.  See Nat'l Inst. of Military Justice v. U.S. Dep't of Def.,

512 F.3d 677, 686-87 (D.C. Cir. 2008).  Whenever a private liaison initiates the contact and communicates with his or her "own . . . interests in mind," such communications cannot satisfy the threshold requirement of Exemption 5.  See Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 12 (2001).

At present, Defendants' documentation is insufficient for the Court to determine whether the records withheld under Exemption 5 satisfy the inter-agency or intra-agency memoranda test.  In order for the Court to apply this (b)(5) threshold requirement, Defendants must provide some indication as to the identities of the agency personnel and other individuals involved in a particular exchange.  Neither the summary Vaughn Index nor the accompanying documents do so.  In a typical Vaughn Index entry, Defendants conclude: "FOIA Exemption 5 is applied to protect from disclosure draft declarations that are deliberative, non-finalized versions being reviewed.  Draft materials reflect the agency decision making process and are deliberative in nature." Vaughn Index at 2.  Elsewhere, Defendants offer thin, conclusory statements such as: "The withheld and redacted information meets the threshold for 'inter-agency or intra-agency memorandums or letters,' none of which are communications with third parties." Mot. at 10.  Despite Plaintiff's requests for additional information on the "authors and intended recipients" of these documents, Opp. at 22, Defendants simply repeat verbatim the same inadequate justification, maintaining that "none [of the documents] are communications with third parties." Reply at 10.

Defendants have released many of their documents in partially redacted form, which, under ideal circumstances, could "supplement[] the Vaughn index . . . and 'serve[] to illuminate the nature of the redacted material.'" Morley v. CIA, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (quoting Judicial Watch v. FDA, 449 F.3d at 145).  Unfortunately, the unredacted portions of the

documents do little, if anything, to prove that they meet the threshold requirement of (b)(5).  For all the email exchanges in this category, Defendants have also redacted names and personal identifiers for the majority of senders and recipients, and the text rarely displays email signatures attesting to the parties' positions or agency affiliations.  See, e.g., 2012FOIA8229.000817-0820; 0798-0799 (email chain provides title and affiliation of sender but do not identify recipients). The non-email records withheld under Exemption 5 characteristically fail to provide any identification of either the author or intended audience.  See, e.g., 2012FOIA8229.000965-0966 (document redacted in full and lacking identifying information; Vaughn Index misidentifies the document as an email communication); 2012FOIA8229.001020-1021 (handwritten notes redacted in full without indication of source or recipient; Vaughn Index misidentifies the document as an email communication).  Although the Court could end its analysis here, it hopes that the following discussion of each privilege proves instructive on what must further be accomplished if the government desires to protect these documents.

While many of Defendants' (b)(5) withholdings may in fact qualify as inter-agency or intra-agency memoranda, the current state of the documentation is insufficient to adequately support a request for summary judgment.  The Court could opt to use its in camera review to engage in informed guesswork as to the identities of the authors and recipients of each document, but that hardly seems an appropriate endeavor.

ii.    Deliberative-Process Privilege

The deliberative-process privilege of Exemption 5 "calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy," while "withholding [] all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be."  Sears, Roebuck, 421 U.S. at 153 (internal quotations

omitted).  In order to justify a withholding under this privilege, the government must prove two

basic elements.  First, it must demonstrate that the document qualifies as "pre-decisional" in the

sense that it was "[a]ntecedent to the adoption of an agency policy."  Jordan v. U.S. Dep't of

Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc), partially overruled on other grounds by

Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1053 (D.C. Cir. 1981).

Second, the government must show that the document forms "a direct part of the deliberative

process in that it makes recommendations or expresses opinions on legal or policy matters."

Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (Vaughn II); see also Pub. Citizen, Inc.

v. Office of Mgmt. and Budget, 598 F.3d 865, 876 (D.C. Cir. 2009) (explaining that "[a]

document that does nothing more than explain an existing policy cannot be considered

deliberative").  These elements are referred to as "predecisional" and "deliberative."

　　　　Over the years, courts in this Circuit have developed a substantial body of precedent to

guide the government in formulating descriptions of its deliberative-process withholdings.  A

court's decision on the applicability of this privilege fundamentally "depend[s] upon the

individual document and the role it plays in the administrative process."  Coastal States, 617 F.2d

at 867.  The government, accordingly, bears the burden of situating the document within that

process and must provide detailed information on the "nature of the decisionmaking authority

vested in the office or person issuing the disputed document," Taxation with Representation

Fund v. IRS, 646 F.2d 666, 678 (D.C. Cir. 1981), as well as the "relative positions in the

agency's 'chain of command' occupied by the document's author and recipient."  Senate of the

Com. of Puerto Rico, 823 F.2d at 586 (quoting Arthur Andersen & Co. v. IRS., 679 F.2d 254,

258 (D.C. Cir. 1982)).  Indeed, in order to discharge its burden, the government must specifically

"establish[] what deliberative process is involved, and the role played by the documents in issue

24

in the course of that process."  Coastal States, 617 F.2d at 868 (citing Vaughn II, 523 F.2d at 1146).

In this case, Defendants have consistently failed to provide the type of information required to discharge their burden of proof under the deliberative-process privilege.  Starting with the "summary" Vaughn Index, Defendants have offered perfunctory descriptions that are vague and categorical.  In one example, a single entry invokes the deliberative-process privilege for a laundry list of records including "draft operational plans, comments on the premises description, draft investigation summaries, draft Operational Procedures, and proposed personnel assignments." Vaughn Index at 2.  The entry claims that these materials "reflect the agency decision making process and are deliberative in nature," id., without offering any description of this process, the identities of either the drafters or the recipients of the documents, or their respective positions within the agency "chain of command."  Senate of the Com. of Puerto Rico, 823 F.2d at 586 (citing Anderson, 679 F.2d at 258).

Defendants' subsequent submissions, furthermore, do not aid the Court in making an informed assessment of whether redacted information is either predecisional or deliberative. Defendants assert that all of the documents withheld under the deliberative-process prong "consist[] of three categories of information," constituting "part of the internal deliberations of federal government employees regarding issues that resulted in final agency decisions."  Reply at 12.  The categories that follow in Defendants' shorthand list do not identify individual documents, but merely provide broad-brush descriptions of their content.  See id.

For some of the Vaughn entries, it is unclear whether Defendants invoke the deliberative-process privilege at all, a confusion that is only exacerbated by conflicting statements in Defendants' Reply and on the marked portions of the documents submitted for in camera review.

For instance, Defendants draw the Court's attention to an entry in the Index encompassing nine separate documents, claiming that none of the records has any relationship to the deliberative-process privilege.  See Reply at 11-12 (quoting Vaughn Index at 3).  The Vaughn entry itself, conversely, is at best ambiguous on this point, employing the word "deliberative" and cautioning that disclosure of the documents would create a "chilling effect on the free and frank exchange of ideas within the agency."  Vaughn Index at 3.

*In camera* review, furthermore, reveals a number of discrepancies between the descriptions in Defendants' Reply and the markings actually included on the face of the redacted documents.  For example, Defendants claim that document 2012FOIA8229.000788-0789 is only withheld pursuant to the work-product and attorney-client prongs of (b)(5) (or possibly both simultaneously).  See Reply at 11-12.  The document itself, however, clearly bears the abbreviation for deliberative process (b5DP) and does not bear the abbreviation for the work-product prong.  See 2012FOIA8229.000788-000789.  Defendants also claim that they invoke only the work-product and attorney-client privileges for documents 2012FOIA8229.000798-0799, 0801, 0805, 0809-0810, 0913-0915, 0932-0933, 0965-0966, and 1020-1021, see Reply at 14, and not the deliberative-process prong.  See id. at 10-12.  Such a claim is perplexing given that most of the documents that Defendants refer to, with the exception of pages 0805, 0809-0810 (not currently found in Defendants' withholdings) and pages 1020-1021, bear the abbreviation for deliberative process.  This is just one of the many instances in which Defendants have provided contradictory, misleading, and poorly explained accounts of their withholdings.  It should not require the Court's review to discern these obvious errors.

It may very well be that many of the redacted documents qualify for the protections of Exemption 5 for reasons of deliberative process.  Indeed, past cases have found that the

deliberative-process privilege often exempts the disclosure of documents that resemble a number of those that Defendants have submitted. See Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 880 F. Supp. 2d 105, 111-12 (D.D.C. 2012) (email exchanges discussing draft responses to press inquiries); Exxon Corp. v. Dep't of Energy, 585 F. Supp. 690, 698 (D.D.C. 1983) (documents marked as "draft"). This Court, however, is not at liberty to draw such conclusions based on mere inference and guesswork. As other courts in this District have emphasized: "Mere classification of a document as a 'draft document' does not end the inquiry; the government must also prove that the document is pre-decisional and related to a deliberative process." Techserve Alliance v. Napolitano, 803 F. Supp. 2d 16, 27 (D.D.C. 2011) (citing Coastal States, 617 F.2d at 866). Given the current state of Defendants' documentation, the Court cannot agree that Defendants' withholdings are proper under the deliberative-process prong of (b)(5).

### iii.    Attorney Work-Product Privilege

The attorney work-product prong of Exemption 5 extends to "documents and tangible things that are prepared in anticipation of litigation or for trial" by an attorney. Fed. R. Civ. P. 26(b)(3)(A). As this Court has noted in the past, the work-product privilege is relatively broad, encompassing documents prepared for litigation that is "foreseeable," if not necessarily imminent. See Am. Immigration Council, 905 F. Supp. 2d at 221. The privilege is not endless, however.

> While it may be true that the prospect of future litigation touches virtually any object of a [law-enforcement agency] attorney's attention, if the agency were allowed "to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated."

Senate of the Com. of Puerto Rico, 823 F.2d at 586-87 (quoting Coastal States, 617 F.2d at 865). When reviewing a withholding under the work-product prong of (b)(5), the "'testing

question' . . . is 'whether, in light of the <u>nature of the document</u> and the <u>factual situation in the</u> <u>particular case</u>, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" <u>In re Sealed Case</u>, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting <u>Senate</u> <u>of the Com. of Puerto Rico</u>, 823 F.2d at 586 n.42) (emphasis added).  At a minimum, the government must demonstrate that the lawyer who prepared the document possessed the "subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."  <u>Id.</u>  It follows that, in order for the government to discharge its evidentiary burden, it must 1) provide a description of the nature and contents of the withheld document, 2) identify the document's author or origin (by job title or otherwise), 3) describe the factual circumstances that surround the document's creation, and 4) provide some indication of the type of litigation for which the document's use is at least foreseeable.

        Unfortunately, Defendants' withholdings under the work-product prong of (b)(5) suffer the same infirmities identified for their deliberative-process withholdings.  For starters, all of Defendants' submissions lump the analyses of attorney-client and work-product documents together, offering practically indistinguishable justifications for the use of both prongs.  <u>See, e.g.</u>, Mot. at 12-14; Reply at 12-14.  These submissions rely on categorical summaries that supposedly apply to multiple, different documents.  In one such example, Defendants opine that "documents withheld or redacted pursuant to Exemption 5 were protected by either the attorney-client privilege or the attorney work-product doctrine, or in some cases, both privileges."  Mot. at 12. In what explanation follows, Defendants provide only abstract descriptions covering at least twenty-three documents, <u>see id.</u> at 13-14 ("request[s] [for] legal advice and representation for a specific purpose," "employees seeking legal advice in response to a specific issue," "emails regarding specific litigation cases or enforcement operations"), paired with unvarnished claims to

the effect that that "the documents are textbook examples of attorney work product and information protected from disclosure by the attorney-client privilege." Id. at 13.

The Vaughn Index fares no better, grouping multiple, distinct documents under generic headings that are formulated in the broadest possible terms. See, e.g., Vaughn Index at 3 (providing such categories as "Litigation Reports and Attorney notes regarding ongoing cases," and "Emails and draft discussions regarding NGO questions"). The index descriptions are as short on detail as they are expansive in scope. See id. ("These materials were drafted by attorneys in contemplation of litigation and are therefore attorney work product. Additionally, these materials were intended to be confidential and to be shared with only with clients and are therefore also protected by the attorney-client privilege."). Ostensibly, the Court is left to untangle the various strands of argument and to attempt to impose some semblance of order on this textual confusion.

While the Court recognizes that the government must walk a fine line between under- and over-disclosure, the work-product prong of Exemption 5 requires that agencies make a good-faith effort to describe the nature of each individual document and the particular circumstances that make its use in litigation foreseeable. See In re Sealed Case, 146 F.3d at 884; Senate of the Com. of Puerto Rico, 823 F.2d at 586 n.42. Without such information, the Court cannot distinguish true work-product documents from those that happen to have been penned by someone with a law degree.

An example from the Court's in camera review of the documentation is illustrative. Document 2012FOIA8229.001020-1021 is described in Defendants' Vaughn Index as an "[e]mail[] regarding specific litigation cases or Enforcement Operations," to which either the work-product, attorney-client, or both privileges apply. See Vaughn Index at 4. The actual

document is a scanned copy of handwritten notes (as opposed to an email) that neither bears the name and function of the author, nor identifies the document's purpose. This is typical of Defendants' withholdings pursuant to the work-product privilege. Rather than playing the role of the sleuth and attempting to deduce the nature and purpose of each document through its *in camera* review, the Court urges Defendants to submit a sufficiently detailed and particularized description of each document that they wish to withhold in accordance with the guidelines set out above. Summary judgment for Defendants' work-product withholdings is thus clearly unwarranted.

### iv.    Attorney-Client Privilege

Exemption 5 also extends to attorney-client privileged documents – namely, confidential communications from clients to their attorneys, as well as communications from attorneys to their clients containing confidential information supplied by the client. See Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997). As with the other prongs of (b)(5), it falls to the government to prove, through "detailed and specific information," that the withheld information falls within the domain of the attorney-client privilege. See Campbell, 164 F.3d at 30. In order to prevail on a motion for summary judgment in this area, the government must substantiate five essential elements in its supporting documentation:

> (1) [T]he holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client. Additionally, [(5)] a "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since."

Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 841 F. Supp. 2d 142, 153-54 (D.D.C. 2012)

(citing In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984); Coastal States, 617 F.2d at 863);

accord Fed. Trade Comm'n v. GlaxoSmithKline, 294 F.3d 141, 146 (D.C. Cir. 2002).

"In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." Tax Analysts, 117 F.3d at 618.  Where an agency lawyer serves in a mixed capacity that involves responsibilities both within and "outside the lawyer's sphere," however, the agency employee's communications will only be protected to the extent that they involve his or her professional, legal capacity.  In re Sealed Case, 737 F.2d at 99.

In this case, ICE has withheld over 100 pages of documents under the attorney-client privilege of (b)(5), see Vaughn Index at 3-4, although some of these records are no longer challenged.  See Jt. Stip., ¶ 3.  Defendants' Vaughn Index provides, at best, thin descriptions of broad categories of materials, paired with assertions that merely parrot legal conclusions.  For example, a Vaughn entry applicable to nine separate documents spanning fifteen pages of material tersely concludes that "[i]n each instance, the client was seeking legal advice from the attorney."  Vaughn Index at 3.  In another entry encompassing more than seventy pages, Defendants claim that "[T]hese materials were intended to be confidential and to be shared only with clients."  Id.  While this may very well be true, the Court simply cannot issue summary judgment on the grounds that the disputed materials were "intended" to be held in confidence. The government must demonstrate confidentiality in fact, whatever its subjective intentions may have been.  See In re Sealed Case, 737 F.2d at 100.

Elsewhere in its submissions, Defendants offer explanations of their attorney-client withholdings that are equally insufficient.  Justifications for both the work-product and attorney-client prongs are lumped together and more or less reproduce the categorical descriptions offered

in Defendants' <u>Vaughn</u> Index.  <u>See</u> Reply at 12-14.  Inexplicably, the Reply devotes additional

time and energy to a number of withholdings that Plaintiff no longer contests, <u>see id.</u> at 13,

allocating a mere paragraph for those that remain in play.  <u>See id.</u> at 14.  None of Defendants'

submissions offers a document-specific analysis of their attorney-client privileged withholdings,

as required.  The explanations, moreover, do not provide any of the factual detail necessary to

discharge the government's burden for proof.  Defendants do not provide any detail to suggest

that each exchange involved an attorney or a client, <u>In re Sealed Case</u>, 737 F.2d at 98–99, show

that the record was premised on a confidential disclosure from the client, <u>id.</u>, offer any indication

that the exchanges did not involve any non-clients or "strangers," <u>id.</u>, or supply any details to

demonstrate that agency counsel acted in a professional legal capacity, as opposed to a

managerial or other capacity.  <u>Id.</u>  Defendants' submissions, furthermore, do not attempt to prove

that the underlying information in each document was initially kept secret and remains so.  <u>See</u>

<u>Mead Data Cent., Inc. v. U.S. Dep't of Air Force</u>, 566 F.2d 242, 254 (D.C. Cir. 1977) (holding

that documents should be disclosed unless the government could reasonably demonstrate that the

information was "supplied by the Air Force [to agency counsel] with the expectation of secrecy

and was not known by or disclosed to any third party").  The confidentiality of a communication

is not something this Court is at liberty to assume.  <u>See id.</u>

 Defendants request that this Court engage in precisely this type of unjustified assumption

and find that the applicability of the attorney-client privilege is "plainly evident by the

descriptions, and in some cases, the titles of the documents themselves."  Reply at 13.  Even if

FOIA authorized the courts to make such findings based upon an *in camera* review of the

documents alone, Defendants would still be asking too much.  This Court has no independent

knowledge of the specific roles and responsibilities of staff members and legal counsel at ICE.  If

ICE wishes to withhold any of the responsive documents pursuant to the attorney-client prong of Exemption 5, it must submit a sufficiently detailed and particularized description of <u>each</u> withholding that meets the D.C. Circuit's long-established evidentiary requirements.  <u>See</u> <u>In Re Sealed Case</u> 737 F.2d at 98–99; <u>Coastal States</u>, 617 F.2d at 863.  In the event that ICE is legitimately concerned that providing certain factual details will compromise the confidentiality of information within a record, it may choose to supply the Court with a supplemental affidavit that can be reviewed *in camera*.  The Court, therefore, denies summary judgment for all Defendants' withholdings under the attorney-client prong of Exemption 5.

   b.  Exemption 7(E)

Exemption 7(E) authorizes the government to withhold records and documents if they were "compiled for law enforcement purposes," provided that their publication "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Defendants invoke Exemption 7(E) for a variety of records, which are grouped under four broad categories: "All documents containing commonly withheld techniques and procedures of law enforcement," "Detention Management Division Facility Reviews," "Draft Operation Plan," and "Enforcement Operation Plan."  <u>Vaughn</u> Index at 1-2.  The <u>Vaughn</u> Index only matches a limited number of these 7(E) withholdings to specific document page ranges.  The remainder are described as occurring "[t]hroughout" the disputed documents.  <u>Id.</u> at 1.  Since the disputed records appear to be limited to those containing "law enforcement techniques and procedures," <u>see, e.g.</u>, Mot. at 19-20; Law Decl., ¶ 54, the Court need not consider whether Defendants could also withhold any

of the relevant documents on the grounds that they disclose "guidelines for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E).

In order for the government to invoke the "techniques and procedures" prong of 7(E), it must demonstrate that its withholdings meet three basic requirements. First, the government must show that the documents were in fact "compiled for law enforcement purposes" and not for some other reason. Id. Second, it must show that the records contain law-enforcement techniques and procedures that are "generally unknown to the public." Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 36 (D.D.C. 2012). Finally, the government must show that disclosure "could reasonably be expected to risk circumvention of the law." Id. The Court will discuss the first threshold requirement and then cover the other two together.

i.     Law-Enforcement Purposes

To ascertain whether certain of Defendants' records were "compiled for law enforcement purposes," the Court must first have a clear understanding of "how and under what circumstances the requested files were compiled, . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" Jefferson v. U.S. Dep't of Justice, Office of Prof'l Responsibility, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citing Weisberg v. U.S. Dep't of Justice, 489 F.2d 1195, 1202 (D.C. Cir. 1973) (quoting Aspin v. Dep't of Defense, 491 F.2d 24, 27 (D.C. Cir.1973)).

As Defendants correctly note, ICE is an agency specializing in law enforcement, and, consequently, its decision to invoke Exemption 7(E) is entitled to a measure of deference. See Reply at 15 (citing Abdelfattah v. U.S. Imm. & Customs Enforcement, 851 F. Supp. 2d 141, 145 (D.D.C. 2012)); accord Campbell, 164 F.3d at 32. This deferential standard of review, however,

is not a "vacuous" one, and it does not authorize a wholesale departure from all evidentiary requirements.  See Campbell, 164 F.3d at 32.  On the contrary, a law-enforcement agency must still make a showing of "law enforcement purposes" by providing a sufficient explanation that "establish[es] a rational 'nexus between [the withholding] and one of the agency's law enforcement duties,'" as well as a "connection between an 'individual or incident and a possible security risk or violation of federal law.'"  Id. (citing Pratt v. Webster, 673 F.2d 408, 419 (D.C. Cir. 1982)).  If the law-enforcement agency's explanatory documents "fail to supply facts" in sufficient detail to meet the Pratt nexus test, the reviewing court cannot grant summary judgment in the agency's favor.  Quinon v. FBI, 86 F.3d 1222, 1229 (D.C. Cir. 1996).

Defendants' Vaughn Index and associated documentation fall well below the standard set out in Pratt.  Aside from the obvious difficulties created by Defendants' refusal to specifically identify the locations of many of their 7(E) withholdings, see, e.g., Vaughn Index at 1 (providing a list of different "law enforcement techniques" for which no page numbers are indicated), their argument appears to rest almost entirely on the premise that, as a law-enforcement agency, ICE's records and documents are necessarily produced for law-enforcement purposes.  See Law Decl., ¶ 47 ("ICE is tasked with preventing any activities that threaten national security and public safety . . . .  Therefore, all the records responsive to Plaintiff's FOIA request were compiled for law enforcement purposes and meet the threshold requirement of FOIA exemption (b)(7).").  Defendants summarily conclude that, because Plaintiff requested information related to "activities that ICE performs in a law enforcement and national security context," this Court can take it for granted that all of ICE's withholdings under Exemption 7(E) automatically satisfy the "law enforcement purposes" requirement.  See Reply at 15.  The Court notes that similar explanations prepared by ICE's FOIA unit and submitted in other jurisdictions have been

deemed insufficient to prove that the underlying records were "compiled for law enforcement purposes." See Black v. U.S. Dep't of Homeland Sec., No. 10-2040, 2012 WL 3155142, at *3 (D. Nev. Aug. 2, 2012) (declaration insufficient because it failed to "discuss: (1) the underlying [] investigation to show that the investigation was conducted pursuant to [ICE's] law enforcement duties, or (2) how ICE determined that the underlying investigation was for law enforcement purposes").

In this case, the Court must follow consistent Circuit precedent by requiring Defendants to submit further factual explanations that satisfy the Pratt standard. At a minimum, Defendants must provide an itemized listing of their withholdings and redactions pursuant to 7(E), accompanied by a description of the circumstances in which the records were compiled, Jefferson, 284 F.3d at 177, the relevant law-enforcement activity for each, Campbell, 164 F.3d at 32, the nature of the incident or individual involved, id., and the perceived security risk or likely violation of the law. Id. While Defendants need not provide repetitive descriptions of redundant documents, they should not resort to description in "generalities" for multiple, different texts. Judicial Watch v. FDA, 449 F.3d at 147.

ii.    Remaining Evidentiary Requirements of 7(E)

Given that Defendants' documentation fails to sufficiently meet the threshold requirement of showing that each record was "compiled for law enforcement purposes," this Court need not engage in further analysis to determine whether summary judgment is appropriate for Defendants' 7(E) withholdings. To assist Defendants in their future efforts, the Court will nonetheless summarize the evidentiary requirements that must be met in order to prove that the withholdings contain "techniques and procedures" not generally known to the public, Nat'l

36

Whistleblower Ctr., 849 F. Supp. 2d at 36, the disclosure of which could "reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

While the government faces a "relatively low bar" to show that it has properly withheld documents containing law-enforcement techniques and procedures, Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011), it must nevertheless provide a "relatively detailed justification" for each record that permits the reviewing court to make a meaningful assessment of the redactions and to understand how disclosure would create a reasonably expected risk of circumvention of the law. Strunk v. U.S. Dep't of State, 845 F. Supp. 2d 38, 47 (D.D.C. 2012) (citing Blackwell, 646 F.3d at 42)).  Generic portrayals of categories of documents and vaguely formulated descriptions will not suffice; accordingly, the government must provide sufficient facts and context to allow the reviewing court to "deduce something of the nature of the techniques in question."  Clemente v. FBI, 741 F. Supp. 2d 64, 88 (D.D.C. 2010); accord Davis v. FBI, 770 F. Supp. 2d 93, 100 (D.D.C. 2011) (finding defendant's "generic description of the documents as 'prosecution memoranda . . . detailing evidence gathering efforts and prosecution strategies in [plaintiff's] criminal case'" insufficient to describe techniques and procedures involved); Strunk, 845 F. Supp. at 46-47 (summary listing of categories of techniques and procedures, including "computer screen transaction codes . . . examination and inspection procedures, internal reporting requirements, names of specific law enforcement databases, . . ." not enough to discharge evidentiary burden).

Defendants' descriptions of its withholdings under Exemption 7(E) exhibit all of the inadequacies that courts in this Circuit have cautioned against.  The Vaughn Index groups many of the 7(E) withholdings into a single, catchall category for which no page numbers are indicated.  See Vaughn Index at 1 ("All documents containing commonly withheld techniques

and procedures of law enforcement").  The Index also fails to adequately describe the nature of

the underlying techniques and procedures, instead offering a laundry list of what that may be

included "throughout" the various documents.  See id. (various techniques "includ[e] agent

assignment codes, operation names, agency case numbers, National Program Manager email

addresses, TECS Access Codes, Program Codes, Radio Channels, [] encounter identification

numbers . . . [h]ow law enforcement officer access databases, access case material, access

agency radio channels, store evidence, reference related cases . . ." and so on).  Defendants'

briefs and supporting declarations exhibit the same flaws, often resorting to categorical

descriptions that occasionally diverge from those in the Vaughn Index.  See, e.g., Law Decl. ¶ 54

(listing a number of items not found in Vaughn Index including, inter alia, "methods used by

ICE to identify individuals believed to be illegal aliens using the identity of U.S. Citizens . . . ,

secured URL addresses," and "site reporting locations").

　　　　The Court is not expecting such full disclosure as to defeat the purpose of the exemption,

but in past cases analyzing 7(E) withholdings, courts in this District have found that the

government carried its evidentiary burden where it provided 1) a description of the technique or

procedure at issue in each document, 2) a reasonably detailed explanation of the context in which

the technique is used, 3) an exploration of why the technique or procedure is not generally

known to the public, and 4) an assessment of the way(s) in which individuals could possibly

circumvent the law if the information were disclosed.  See, e.g., Skinner v. U.S. Dep't of Justice,

893 F. Supp. 2d 109, 113-14 (D.D.C. 2012) (detailed description of the function, application, and

highly restrictive conditions for access to the TECS database, along with specific harms expected

from disclosures of codes, sufficient to discharge evidentiary burden); Strunk v. U.S. Dep't of

State, 905 F. Supp. 2d 142, 147 (D.D.C. 2012) (explanation of the use, application, means of

access to, and risks of dissemination of computer access codes sufficient to discharge evidentiary burden).

At present, this Court does not have sufficient information to make an accurate assessment of the propriety of Defendants' withholdings under Exemption 7(E).  While past cases indicate that many of Defendants' techniques and procedures are likely to qualify for protection, this Court is under a duty to decide the matter *de novo*, using only the proof submitted by Defendants.  See Campbell, 164 F.3d at 30.  While bearing in mind FOIA's strong preference for public disclosure, Defendants may opt to submit confidential affidavits for *in camera* review if such a course of action is necessary to prevent the disclosure of protected law-enforcement techniques and procedures.  See Simon, 980 F.2d at 784.

3. *Withholdings for Which no Exemptions are Claimed*

A number of Defendants' documents that they submitted to Plaintiff and this Court in redacted form have been withheld without any Vaughn Index descriptions or claimed FOIA Exemptions.  See, e.g., 2012FOIA8229.000935-0944 (marked as "non-responsive duplicate"); 2012FOIA8229.000909-0912 (marked as "refer to DOJ").  Justifications for FOIA withholdings are confined to the Act's nine narrowly tailored exemptions.  See Rose, 425 U.S. at 361.  Unless Defendants indicate the applicable exemption(s) for all of the documents in this category and provide a description of the contents sufficient to satisfy FOIA's evidentiary requirements, this Court will have no choice but to compel disclosure.

4. *Segregable Data*

At present, the Court need not address Plaintiff's claim that Defendants have failed to release all reasonably segregable information from their withholdings.  See Opp. at 33-35 (citing 5 U.S.C. § 552(b)).  To aid in the preparation of Defendants' further explanations of the

withholdings, the Court wishes to make explicit this Circuit's precedent on segregability of non-exempt information.  Defendants are correct that the government is "'entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material.'"  Reply at 18 (quoting Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013) (alteration in original)).  This presumption of compliance, however, does not obviate the government's obligation to carry its evidentiary burden and fully explain its decisions on segregability.  See Mead Data, 566 F.2d at 261.  Once Defendants have specifically identified the exempted portions of their records and described them in accordance with the requirements set out above, see Sections III(B)(2)(a)-(b), *supra*, they must also provide descriptions of excerpts deemed to be non-segregable, with explanations as to these decisions.  See Mead Data, 566 F.2d at 261.

Defendants' current conclusory assertion that ICE "has reviewed each record line-by-line to identify information exempt from disclosure . . . [finding that] all information not exempted . . . was correctly segregated," see Reply at 18, will not suffice to discharge this burden.  As the D.C. Circuit stressed in Mead Data, "[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts."  566 F.2d at 261.  The Court trusts that Defendants will follow this guidance.

## IV.    Conclusion

For the forgoing reasons, the Court will deny Defendants' Motion for Summary Judgment in full.  Defendants are advised to submit new documentation that demonstrates the adequacy of their search and clarifies discrepancies apparent in their prior declarations.  Defendants must also furnish the Court with full explanations of their withholdings under all

relevant FOIA Exemptions for any records and redacted portions not made available to Plaintiff.

An Order accompanies this Memorandum Opinion.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  June 24, 2013