# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN IMMIGRATION COUNCIL,

 Plaintiff,

  v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

 Defendants.

Civil Action No. 12-856 (JEB)

## MEMORANDUM OPINION

 This dispute started with a Freedom of Information Act request by the American Immigration Council, an immigration law and policy group, seeking information about individuals' access to counsel during their interactions with Immigration and Customs Enforcement. After the government repeatedly refused to release documents responsive to AIC's request, the group sued the Department of Homeland Security and ICE. Defendants finally produced certain responsive documents and moved for summary judgment, which this Court rebuffed in Am. Immigration Council v. Dept. of Homeland Sec., 950 F. Supp. 2d 221 (D.D.C. 2013). Defendants have now retooled and renew their request in a second Motion for Summary Judgment. AIC claims, in opposition, that Defendants have still not complied with their obligations under FOIA.

 Although Defendants repeatedly excoriate AIC for "wast[ing] enough of the Court's and Defendants' time," Mot. at 1; see also Reply at 4 n.5, the reality is that Defendants have wasted their own time by neglecting to follow the Court's clear instructions, set out in its prior Opinion, about what they must do to prevail in this matter. Because the government has again failed to

1

demonstrate that it conducted an adequate search for records and has also failed to include in its

Vaughn Index one of the withheld documents, the Court must deny the Motion in part.  The

Court, however, will grant Defendants summary judgment in part on their decisions to redact

eleven documents that were included in their Vaughn Index.

I.      **Background**

The Court's prior decision in this matter laid out in great detail the factual background of

the dispute, see Am. Immigration Council, 950 F. Supp. 2d at 227-28, so this Opinion need

provide only a brief sketch.  In March 2011, AIC submitted a FOIA request to Defendants asking

for:

> [A]ny and all records which have been prepared, received, transmitted, collected and/or maintained by the U.S. Department of Homeland Security and/or U.S. Immigration and Customs Enforcement (ICE), whether issued or maintained by ICE Headquarters offices (including but not limited to the Office of the Assistant Secretary (OAS), Enforcement and Removal Operations (ERO), Homeland Security Investigations (HIS) [*sic*], Management and Administration, Office of the Principal Legal Advisor (OPLA), and the Office of Detention Policy and Planning (ODPP), including any divisions, subdivisions or sections therein); ICE field offices, including any divisions, subdivisions or sections therein; local Offices of Chief Counsel; and/or any other ICE organizational structure; and which relate or refer in any way to any of the following:
> • Attorneys' ability to be present during their clients' interactions with ICE;
> • What role attorneys may play during their clients' interactions with ICE;
> • Attorney conduct during interactions with ICE on behalf of their clients;
> • Attorney appearances at ICE offices or other facilities.

Id. at 227.  A year later, AIC had nothing to show for its troubles but three unsuccessful

administrative appeals challenging Defendants' repeated denials of its request.  See id.

AIC therefore filed suit in this Court, prompting Defendants to release nearly 8,000 pages of responsive documents. See id. at 228. Defendants then moved for summary judgment, claiming that they had conducted a reasonable search for the queried records, produced all documents responsive to AIC's FOIA request, and properly invoked various FOIA exemptions in order to withhold certain materials. See id. at 227. The Court denied that motion on the ground that issues of material fact remained as to the adequacy of Defendants' search and because Defendants' summary Vaughn Index was too vague. See id.

There followed a status conference with both parties, after which the Court ordered Defendants to produce supplemental declarations and an updated Vaughn Index that would cure the defects of their last submission. See Minute Order of July 9, 2013. Defendants complied with the Court's Order and have once again moved for summary judgment. AIC opposes that Motion but has limited its Opposition to two primary issues: the adequacy of Defendants' search and the withholding of twelve specific documents.[1] See Opp. at 4, 14-16. To assist in its analysis of those arguments, the Court ordered Defendants to produce in camera redacted and unredacted copies of the disputed materials. See Minute Order of Feb. 10, 2014. Having now reviewed those records, the Court may consider the parties' legal arguments.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that

---

[1] For ease of reference, the Court will refer to these records as Documents 1 through 12. They correspond to the records listed in Defendants' Vaughn Index, see Response to Order of the Court, Exh. C (Vaughn Index), as follows: Document 1 (page numbers 623-38), Document 2 (782-83), Document 3 (788-89), Document 4 (817-18), Document 5 (856-57), Document 6 (909-12), Document 7 (913), Document 8 (963-64), Document 9 (965-66), Document 10 (990-1002), Document 11 (1020-22), and Document 12 (1023-84).

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  In the event of conflicting evidence on a material issue, the Court is to construe the evidence in the light most favorable to the non-moving party.  See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007).  In FOIA cases, the agency bears the ultimate burden of proof.  See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989).  The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III.    Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361

(1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(3); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious," the Freedom of Information Act "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure'. . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The Court will first address the adequacy of Defendants' search for responsive documents, turn next to the exemptions invoked to justify withholding certain documents, and finish by assessing the segregability of those documents. In the end, the Court concludes that it must deny summary judgment to Defendants on the adequacy of their search and on Document 12, but it may grant Defendants' Motion on their redactions of Documents 1 through 11.

A.  Adequacy of Search

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  Id.  To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail."  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam).  The affidavits or declarations should "set [ ] forth the search terms and the type of search performed, and aver[ ] that all files likely to contain responsive materials (if such records exist) were searched."  Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA.  See Perry, 684 F.2d at 127.  "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  Truitt, 897 F.2d at 542.

Defendants have submitted a lengthy declaration by Ryan Law, Deputy FOIA Officer of ICE's FOIA Office – the third such declaration Defendants have submitted in this case.  See ECF No. 22 (Response to Order of the Court), Att. 1 (Declaration (Third) of Ryan Law); see also ECF No. 12 (Motion for Summary Judgment), Exh. 1 (Declaration of Ryan Law); ECF No. 17 (Reply

to Opposition to Motion for Summary Judgment), Att. 1 (Supplemental Declaration of Ryan Law).  The latest Law Declaration recounts ICE's prosecution of its search as follows: the ICE FOIA Office reviewed AIC's request and instructed three ICE program offices to search for records that would be responsive to that request: the Office of Detention and Removal (ERO), the Office of Investigations (HSI), and the Office of the Principal Legal Advisor (OPLA).  See 3d Law Decl., ¶ 22.  Later, the ICE FOIA Office instructed a fourth program office to search as well – the Office of Detention Policy and Planning (ODPP).  See id., ¶ 23.  ICE ERO searched within its Custody Management Division, ICE OPLA searched within its Homeland Security Investigations Law Division and District Court Litigation Division, and ICE ODPP searched within its Network Shared Drive and the ICE Policy Manual.  See id., ¶¶ 24-32, 36-51.  ICE HSI determined that it would not likely have documents responsive to AIC's request.  See id., ¶¶ 33-35.  These searches turned up a total of 6,906 pages of potentially responsive records.  See id., ¶ 20.

The Court's first decision denying Defendants summary judgment made very clear what was necessary for them to prevail on the adequacy issue: "In order for [ICE's search] methodology to be sufficient, ICE would, at a minimum, have to aver that it has searched all files likely to contain relevant documents."  Am. Immigration Council, 950 F. Supp. 2d at 230 (emphasis added).  That standard came from the D.C. Circuit's decision in Oglesby v. Dept. of Army, 920 F.2d 57 (D.C. Cir. 1990), which held that a search is inadequate if it includes only those records "most likely to contain the information which had been requested" because an "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested."  Id. at 68 (emphasis added).  According to the Oglesby court, an agency must "aver[] that all files likely to contain responsive materials (if such records exist)

were searched," since that "is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." Id. (emphasis added). Indeed, as this Court observed in its prior decision denying Defendants summary judgment, "Agencies regularly make such attestations when they use similar methods of selecting which departments and files to search." Am. Immigration Council, 950 F. Supp. 2d at 230 (citing Brehm v. Dept. of Def., 593 F. Supp. 2d 49 (D.D.C. 2009), and Nation Magazine v. U.S. Customs Service, 71 F.3d 885 (D.C. Cir. 1995)). "Where the government has not made such an attestation, courts have typically found that an issue of material fact exists as to the adequacy of the search." Id. (citing Jefferson v. Bureau of Prisons, No. 05-848, 2006 WL 3208666 (D.D.C. Nov. 7, 2006), Bonaparte v. DOJ, 531 F. Supp. 2d 118 (D.D.C. 2008), and Maydak v. DOJ, 362 F. Supp. 2d 316 (D.D.C. 2005)).

Remarkably, despite the many hours that Defendants have apparently invested in responding to AIC's FOIA request, they have still not followed the Court's instructions on this point. When the Court denied Defendants' last Motion, it divided its analysis into two components: first, the selection of offices and files to search, and second, the search of those selected locations. See id. at 230-231. In that decision, the Court found that ICE's search was inadequate on both counts. Once again, the Court finds that ICE's selection of offices and files to search is insufficient. Although it need not decide the issue, the Court also notes that AIC has raised several important concerns about ICE's search of the offices that it did select.

The first Law Declaration that Defendants submitted with their initial Motion for Summary Judgment stated that ICE had searched those offices "most likely to possess records responsive to [Plaintiff's] request." Id. (alteration in original) (internal quotation marks omitted). The Court rejected that Motion because "Defendants ha[d] not indicated that all those offices and

records systems likely to contain responsive records ha[d] been searched." Id. at 230 (emphasis added). Yet the third Law Declaration that Defendants have submitted in this case commits the same exact sin, stating that the ICE FOIA Office reviewed AIC's request and "determined that ICE ERO, HSI, and OPLA would be the ICE program offices that would likely maintain records that would be responsive to Plaintiff's FOIA request." See 3d Law Decl., ¶ 22. That statement once again fails to indicate whether Defendants searched "all files likely to contain relevant documents." Am. Immigration Council, 950 F. Supp. 2d at 230 (emphasis added).

A charitable reading of the declaration, moreover, which might infer that Law intended to suggest that ERO, HSI, and OPLA were the only offices likely to contain responsive records, is foreclosed by its very next section. There, Law adds that "the ICE FOIA Office [later] instructed ICE ODPP [Office of Detention Policy and Planning] to conduct a search for records that would be responsive to Plaintiff's FOIA request." 3d Law Decl., ¶ 23. Apparently, then, ICE itself did not believe that a search of ERO, HSI, and OPLA would have been enough. Indeed, as this Court specifically noted in denying Defendants' last Motion for Summary Judgment, an attestation that the agency searched filing systems "likely to contain responsive records" also requires an accompanying averment that "it is unlikely that other . . . directorates would possess records responsive to Plaintiff's request." Am. Immigration Council, 950 F. Supp. 2d at 230 (quoting Brehm, 593 F. Supp. 2d at 49-50) (internal quotation marks omitted). The affidavits Defendants have submitted contain no such assurance.

Defendants dispute this characterization of Law's latest declaration, thrice claiming that it establishes that ICE searched "the only offices reasonably calculated to maintain records responsive to Plaintiff's request." Mot. at 11; Reply at 9, 10; see also Reply at 9 ("[T]he updated Law Declaration . . . affirmatively avers that . . . the searches conducted swept up all responsive

documents as required.").  While Defendants may wish this were so, the language of the declaration speaks for itself.  Nowhere does it affirm that ICE searched "the only" offices likely to have responsive records.  Although, as Defendants note, the adequacy of a search does not depend on "whether additional potentially responsive documents exist," Lardner v. FBI, 875 F. Supp. 2d 49, 55 (D.D.C. 2012), the problem here is that Defendants have failed to confirm that they searched "all files likely to contain responsive materials," Oglesby, 920 F.2d at 68, not that other potentially responsive records may exist elsewhere.

As the Court noted in its prior decision on this matter, the necessity that ICE aver it searched "all files likely to contain relevant documents" may appear a mere "technical requirement, [but] the facts of this case demonstrate its importance."  Am. Immigration Council, 950 F. Supp. 2d at 231.  In that round of the litigation, AIC had argued "that certain offices, sub-offices, and filing systems should have been searched, [and] the Court [could not] begin to analyze such a contention until it kn[ew] ICE's position on whether any of those locations have potentially responsive documents."  Id. (citations omitted).  Here again, AIC has alleged that ICE should have searched for responsive records in certain additional offices and sub-offices – for example, ICE field offices and local Offices of Chief Counsel – as specified in its initial FOIA request.  See Opp. at 10; Am. Immigration Council, 950 F. Supp. 2d at 227.  As with the last Motion, the Court cannot judge the merits of AIC's contention without knowing Defendants' position on whether any of those locations are likely to have responsive documents.  In the absence of an affidavit containing the specific assertion that ICE searched all files likely to contain responsive documents – or, the contrapositive, that the files ICE did not search were not likely to contain responsive documents – the Court cannot conclude that Defendants' search was adequate.

Because Defendants have failed to establish that they searched all the ICE program offices likely to maintain records responsive to AIC's FOIA request, the Court need not reach the question of whether Defendants' searches <u>within</u> those offices were also sufficiently comprehensive.  That said, a few of the arguments raised in AIC's Opposition do give cause for concern.  Although Law's declaration uses the right language in averring that each of ICE's search for records within ERO, HSI, OPLA, and ODPP was "reasonably calculated to locate all records that would be responsive to the Plaintiff's FOIA request," 3d Law Decl., ¶¶ 32, 40, 46, 51; <u>see also</u> <u>id.</u>, ¶¶ 34-35 (explaining that a search of HSI's investigative case-management system "would not have been reasonably calculated to uncover records responsive to the Plaintiff's FOIA request"), AIC observes that it includes no explanation of <u>how</u> ICE decided where to search within each office, nor <u>why</u> certain sub-offices were not searched – for instance, the Field Legal Operations division, the Training division, and the Detention and Removal Law section of OPLA.  <u>See</u> Opp. at 12 (citing DHS ICE Office of the Principal Legal Advisor Organizational Chart, <u>available at</u> http://goo.gl/svnnYr); <u>see also</u> <u>id.</u> at 9-11.  Defendants would do well to consider these points when preparing the declaration for their next Motion.

The Court is sympathetic to the many hours Defendants have already invested in this case and appreciates that the extremely broad nature of AIC's request may have made it particularly difficult to fulfill.  <u>See</u> <u>CREW v. DOJ</u>, 955 F. Supp. 2d 4, 16 (D.D.C. 2013) (FOIA's evidentiary burden likely to create significant costs for government agencies, but congressional policy requires costs be borne).   Defendants have not claimed, however, that AIC required "an unreasonably burdensome search," <u>Am. Fed'n of Gov't Emps., Local 2782 v. Dep't of Commerce</u>, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting <u>Goland v. CIA</u>, 607 F.2d 339, 353 (D.C. Cir. 1978)) (internal quotation marks omitted), such that "a professional employee of

[ICE] familiar with the subject matter" could not "locate the records with a 'reasonable amount of effort.'"  Armstrong v. Bush, 139 F.R.D. 547, 553 (D.D.C. 1991) (quoting Am. Fed'n of Gov't Emps., Local 2782 v. Dep't of Commerce, 632 F. Supp. 1272, 1278 (D.D.C. 1986)). Instead, Defendants have set out to respond to AIC's request, which is a task they must complete in accordance with their obligations under FOIA.  Because they have not provided a declaration averring that ICE searched "all files likely to contain responsive materials" to AIC's FOIA request, Oglesby, 920 F.2d at 68, the Court must deny summary judgment on this point.  As the Court now makes clear for a second time, Defendants "must, in the future, aver that all departments and files likely to contain responsive records were searched and must describe its search procedures in sufficient detail for the Court to determine whether the search was reasonable."  Am. Immigration Council, 950 F. Supp. 2d at 234.

     B.  Exemptions Claimed by Defendants

Search issues now resolved, the remainder of the dispute concerns the propriety of Defendants' claimed FOIA Exemptions for twelve particular documents and whether Defendants properly segregated and released all non-exempt material within those documents.  After considering AIC's threshold complaint regarding the Vaughn Index entries for three of the withheld documents, the Court examines Defendants' invocations of Exemptions 5 and 7, as well as their segregation of the non-exempt portions of the withheld materials.

     1.  *Index Documents 5, 6, and 12*

At the outset, AIC notes that three withheld documents – numbered 5, 6, and 12 in AIC's Opposition brief, see Opp. at 15-16 – do not appear in Defendants' Vaughn Index.  AIC further observes that Documents 5 and 6 were withheld without citation to any FOIA Exemption and instead were simply marked as "non-responsive duplicate" and "refer to DOJ."  Id. at 17-18.

AIC highlighted the same problem in the last round of this litigation, leading the Court to warn then that "[u]nless Defendants indicate the applicable exemption(s) . . . and provide a description of the contents sufficient to satisfy FOIA's evidentiary requirements, this Court will have no choice but to compel disclosure." Am. Immigration Council, 950 F. Supp. 2d at 248. Once again, it seems, Defendants have not gotten the message.

Defendants' Reply brief, fortunately, offers a belated acknowledgement of the error with respect to Documents 5 and 6 and also includes redacted copies of both records, along with a supplemental Vaughn Index that describes their contents and the applicable FOIA Exemption. See Reply at 20-21 & Att. 1 (Documents 5 and 6 Materials). This appears to address AIC's concerns as to these two records, and since AIC has not sought leave to file a Sur-Reply in order to raise new objections on the matter, the Court will deem the issue conceded.

As for Document 12, Defendants offer no response, let alone explanation, for why the record does not appear in their Vaughn Index. Without a Vaughn entry describing the contents of the document or the applicability of the claimed exemptions, the government has not carried its burden to show the appropriateness of its decision to withhold it. The Court must therefore deny Defendants summary judgment as to Document 12 and order them to produce the record in full to AIC.

> 2. *Exemption 5*

Defendants invoked Exemption 5 to withhold nine of the records at issue here: Documents 1, 2, 3, 4, 7, 8, 9, 10, and 11. See Opp. at 14-16; Response to Order of the Court, Exh. C (Vaughn Index). Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). It incorporates three traditional civil-discovery privileges: (1) the

deliberative-process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege. See Cuban v. SEC, 744 F. Supp. 2d 60, 75 (D.D.C. 2010). The Court will separately address the parties' arguments as to each privilege below. Because Defendants have failed to specify which of these three privileges they intended to invoke in order to justify their redaction of Document 10, see Vaughn Index at 7, however, the Court cannot evaluate the appropriateness of that withholding and will not regard that record as eligible for redaction under Exemption 5. Instead, Document 10 will be analyzed in relation to Exemption 7(E). See Section III.B.3, *infra*.

a. Deliberative-Process Privilege

Defendants have invoked the deliberative-process privilege to justify their withholdings of Documents 1, 2, 3, 4, 7, 8, and 9. See Opp. at 14-16; Vaughn Index. Because the Court finds that Document 7 is protected from disclosure under the attorney-client privilege, as explained below, it need only address AIC's objections as to Documents 1, 2, 3, 4, 8, and 9.

The deliberative-process privilege exempts from disclosure "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975). It is intended "to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 9 (2001) (internal quotation marks omitted). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." Id.; see also Dow Jones & Co. v. DOJ, 917 F.2d 571, 573-74 (D.C. Cir. 1990). To fall under the protection of the deliberative-process privilege, withheld material must be both "predecisional" and "deliberative." Mapother v. DOJ, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Material is

"predecisional" if it was "generated before the adoption of an agency policy." <u>Coastal States</u>

<u>Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 866 (D.C. Cir. 1980). It is "deliberative" if it

"reflects the give-and-take of the consultative process." <u>Id.</u>

AIC first challenges the "predecisional" nature of several documents withheld under the

deliberative-process privilege. Specifically, it complains that Defendants have not established

that Documents 2, 3, and 9 were created prior to the adoption of an agency policy.

As to Documents 2 and 3, AIC notes that the records "contributed to the creation of a set

of talking points," and it argues that if those talking points related to policies that had already

been finalized, then they could not be considered "predecisional." Opp. at 21-22. But AIC's

characterization of the records is hardly complete. As Defendants explain in their <u>Vaughn</u> Index,

Documents 2 and 3 contain:

> [D]iscussions between counsel and between counsel and agency
> client [*sic*] on possible ways to respond to NGO inquiries. These
> materials were proposing various ways to respond to questions on
> when an alien is entitled to an attorney during an I-213 interview,
> and extending the status of F-1 students. . . . These materials were
> discussions between agency counsel and its client and deliberated
> between different circumstances and scenarios and what possible
> responses would be under those circumstances.

<u>Vaughn</u> Index at 3.

AIC's characterization of the law is shaky as well. This Court recently had occasion to

note that the deliberative-process privilege covers "agency deliberations about how to respond to

media inquiries regarding prior agency actions, as well as discussions about press coverage of

existing agency policies and suggested talking points about how to answer questions regarding

the duties assigned to agency employees." <u>Competitive Enter. Inst. v. EPA</u>, No. 12-1617, 2014

WL 308093, at *10 (D.D.C. January 29, 1014) (citations omitted). Such deliberations are

regarded as "predecisional" so long as they were "generated as part of a continuous process of

agency decision making, viz., how to respond to on-going inquiries." <u>Judicial Watch v. Dep't of Homeland Sec.</u>, 736 F. Supp. 2d 202, 208 (D.D.C. 2010); <u>see also</u> <u>Judicial Watch v. Dep't of the Treasury</u>, 796 F.Supp.2d 13, 31 (D.D.C. 2011) ("Post-decisional documents properly fall under the deliberative[-]process privilege when they recount or reflect pre-decisional deliberations."). If the deliberative-process privilege protects agency deliberations about how to respond to <u>media</u> inquiries regarding prior agency actions, the Court sees no reason why it should also not protect agency deliberations about how to respond to <u>NGO</u> inquiries regarding prior agency actions. Documents 2 and 3, therefore, are predecisional.

As for Document 9, AIC notes that the <u>Vaughn</u> Index entry describes only "a draft legal opinion as to the right to remain silent and the right to counsel," <u>Vaughn</u> Index at 6, and complains that Defendants do not explain "whether a more final policy document exists, how [Document 9] contributed to any such policy, and whether all or part of [Document 9] was expressly adopted in any final decision." Opp. at 22. AIC cites no authority, however, that requires Defendants to provide such detailed information. The fact that Document 9 is a <u>draft</u> legal opinion, which "contains 'red-lined' edits within the text as well as comments provided by an ICE attorney discussing his/her opinion of a legal holding and its implications," is enough for the Court to conclude that it is "predecisional" with respect to the agency's decision on a <u>final</u> legal opinion. As the Supreme Court has explained, the deliberative-process privilege "calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." <u>Sears</u>, 421 U.S. at 153. A draft legal opinion such as Document 9 falls into the latter camp.

Next, AIC challenges the "deliberative" nature of several redacted documents, noting that such records must be "a direct part of the deliberative process in that [they] make[] recommendations or express[] opinions on legal or policy matters . . . [rather] than explain an existing policy." Public Citizen, Inc. v. OMB, 598 F.3d 865, 876 (D.C. Cir. 2009) (internal quotation marks omitted). According to AIC, Defendants have not established that the records withheld in this case reflect deliberations over new policies rather than explanations of current ones. All AIC has done in support of that argument, however, is to cut out bits and pieces from the Vaughn entries for each document in order to claim that Defendants' descriptions are inadequate. As AIC must know, the Court has reviewed the full Vaughn Index, and the entries simply speak for themselves. For instance, while AIC says that "Defendants do little more than" describe Document 1 as "contain[ing] draft operation plans . . . [and] draft investigation summaries," Opp. at 22, the Vaughn entry for that record provides a much fuller description, which makes clear the document's deliberative nature:

> [Document 1] contains draft operational plans that contain proposed personnel assignments, comments by ICE personnel on the premises description, operational procedures, and summary of investigation, 'red-lined' corrections and modifications of a substantive and grammatical nature of investigation summaries, operational objectives, and operational procedures, and proposed personnel assignments. . . . The comments and corrections made by ICE personnel in reviewing the draft operational plans reflect the agency decision[-]making process and are deliberative nature. The document contained intra-agency discussions prior to a final decision being made by the agency, namely, the final Operation Plan for SAC Chicago.

Vaughn Index at 2. The same is true for the rest of AIC's descriptions – over and over, it cherry-picks a short phrase from the Vaughn entry for each document and uses it to impugn the whole. The Court need not fill space detailing the remainder.

Moving on, AIC argues that Defendants have not shown whether Documents 2 and 3 "were seeking suggestions (and as such would be deliberative) or were simply providing answers (and would not be deliberative)."  Opp. at 23.  Specifically, AIC complains that the <u>Vaughn</u> Index "provides no further information that clarifies whether the authors of the final emails in each . . . Document were final decision-makers" and that "[b]ased on the current information, [it] cannot determine whether the final email in each . . . Document is seeking suggestions or feedback or simply providing answers."  <u>Id.</u>  Without endorsing the legal binary that AIC has drawn on this issue, of which the Court is deeply skeptical, the <u>Vaughn</u> Index and the Court's own *in camera* review of the materials at issue make clear that AIC's concern is unfounded.  The <u>Vaughn</u> Index, in fact, provides much of the detail that AIC claims is missing:

> The emails involve ICE attorneys of a supervisory level (Riah Ramlogan, as well as various deputies whose names have been redacted), ICE attorneys of a non-supervisory level (associate legal advisors whose names have been redacted), and an ICE employee in a non-attorney capacity (Dan Ragsdale [Assistant to the Secretary]).  The emails specifically discuss a request for legal advice from Dan Ragsdale (03/18/09 at 3:51 pm and 03/18/09 at 3:20 pm), guidance to a legal question by a supervisory attorney (03/18/09 at 3:50), recommendation by [a] supervisory attorney to Dan Ragsdale on how to answer [a] legal question related to conference (03/18/09 at 2:53 pm), a draft response from a supervisory attorney regarding a question about I-213 interviews (03/18/09 at 2:53 pm), discussion between [a] supervisory attorney and [a] non-supervisory attorney regarding [a] request for legal advice from Dan Ragsdale (03/18/09 at 8:02 pm), discussion between supervisory attorneys regarding 8 CFR 287.3 and advice to ICE officers (03/18/09 at 3:56 pm; at 4:37 pm; at 4:45 pm; at 5:01 pm).

<u>Vaughn</u> Index at 3.  This impressively detailed account, combined with the Court's own examination of the records, is sufficient to establish the deliberative character of Documents 2 and 3.

Finally, AIC argues that Defendants "have failed to establish that they have withheld only the 'portions' of the records 'reflect[ing] the give and take of the deliberative process.'" Opp. at 23 (quoting Public Citizen, 598 F.3d at 876). As to Document 1, for example, which contains a draft operational plan, AIC contends that "[t]o the extent parts of these pages merely describe finalized ICE policies incorporated into the operations plan, those pages should not be withheld under this privilege as they do not reflect any give and take among those at the agency." Id. at 24. Similarly, as to Documents 4 and 8, which contain a draft answer to a question about the right to counsel, AIC contends that "to the extent these withheld portions include statements about Defendants' already existing and final policies, Defendants should not be permitted to withhold those portions." Id. These arguments effectively claim that Defendants failed to properly segregate and release the non-exempt portions of Documents 1, 4, and 8, and the Court will address them in the segregability section of its analysis. See Section III.B.4, infra. Insofar as redacted portions of Document 1 may reflect finalized ICE policies not subject to exemption under the deliberative-process privilege, Defendants have also claimed protection for those sections under FOIA Exemption 7. As the Court will explain later on, Document 1 is entitled to withholding under that exemption as well. See Section III.B.3, infra.

In sum, the Court finds that Defendants properly redacted Documents 2, 3, 4, 8, and 9 and portions of Document 1 under the deliberative-process privilege. The Court will therefore grant Defendants summary judgment on those points.

### b. Attorney Work-Product Privilege

Defendants invoked the attorney work-product prong of Exemption 5 to justify their redaction of Document 11. See Opp. at 14-16; Vaughn Index at 7. This privilege extends to "documents and tangible things that are prepared in anticipation of litigation or for trial" by an

attorney.  Fed. R. Civ. P. 26(b)(3)(A).  As this Court has noted in the past, the privilege is

relatively broad, encompassing documents prepared for litigation that is "foreseeable," if not

necessarily imminent.  Am. Immigration Council v. Dept. of Homeland Sec., 905 F. Supp. 2d

206, 221 (D.D.C. 2012).  The privilege is not endless, however:

> While it may be true that the prospect of future litigation touches
> virtually any object of a [law-enforcement agency] attorney's
> attention, if the agency were allowed "to withhold any document
> prepared by any person in the Government with a law degree
> simply because litigation might someday occur, the policies of the
> FOIA would be largely defeated."

Senate of the Commonwealth of P.R. on Behalf of Judiciary Comm. v. DOJ, 823 F.2d 574, 586-

87 (D.C. Cir. 1987) (quoting Coastal States Gas Corp. v. DOE, 617 F.2d 854, 865 (D.C. Cir.

1980)).

When reviewing a withholding under the work-product prong of (b)(5), the "'testing

question' . . . is 'whether, in light of the nature of the document and the factual situation in the

particular case, the document can fairly be said to have been prepared or obtained because of the

prospect of litigation.'"  In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting Senate

of the Commonwealth of P.R., 823 F.2d at 586 n.42).  At a minimum, the government must

demonstrate that the lawyer who prepared the document possessed the "subjective belief that

litigation was a real possibility, and that belief must have been objectively reasonable."  Id.  As

this Court explained in its last decision in this matter, in order for the government to discharge its

evidentiary burden, it must (1) provide a description of the nature and contents of the withheld

document, (2) identify the document's author or origin (by job title or otherwise), (3) describe

the factual circumstances that surround the document's creation, and (4) provide some indication

of the type of litigation for which the document's use is at least foreseeable.  See Am.

Immigration Council, 950 F. Supp. 2d at 241-42.

AIC argues that Defendants have failed to follow this Court's previous directions with respect to Document 11 – namely, to identify "the document's author or origin (by job title or otherwise)" and "the factual circumstances that surround the document's creation." Opp. at 27-28 (quoting Am. Immigration Council, 950 F. Supp. 2d at 241-42). The Court disagrees. The Vaughn entry for Document 11 explains that the record "consists of hand written notes by an ICE attorney that discusses the particulars of specific cases involving aliens," Vaughn Index at 7, and Defendants' brief adds that the notes "analyz[e] specific cases involving aliens and the attorney's legal conclusions." Mot. at 19. Although this description is thin enough to give the Court pause, it does identify the document's author by job title and provides some explanation about the document's creation. Coupled with the Court's own *in camera* review of the record, this is just enough to convince the Court that Document 11 was properly withheld under the attorney work-product privilege. The Court will therefore grant Defendants' Motion for Summary Judgment as to this document.

### c.   Attorney-Client Privilege

Defendants invoked the attorney-client privilege to justify their redactions of Documents 2, 3, 7, and 9. See Opp. at 14-16; Vaughn Index at 3, 5-6. Because the Court has already found that Documents 2, 3, and 9 were properly redacted under the deliberative-process privilege, it need only address the parties' arguments as to Document 7.

The attorney-client privilege protects confidential communications from clients to their attorneys, as well as communications from attorneys to their clients containing confidential information supplied by the client. See Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." Tax Analysts, 117 F.3d at 618. Where an agency lawyer serves in a mixed capacity

that involves responsibilities both within and "outside the lawyer's sphere," however, the agency employee's communications will only be protected to the extent that they involve his or her professional, legal capacity.  In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984).

Like the other prongs of (b)(5), it falls to the government to prove, through "detailed and specific information," that the withheld information falls within the domain of the attorney-client privilege.  See Campbell, 164 F.3d at 30.  As the Court explained in its last Opinion denying Defendants summary judgment, the government must substantiate five essential elements in its supporting documentation in order to prevail on a motion for summary judgment in this area:

> (1) [T]he holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client. Additionally, [(5)] a "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since."

Am. Immigration Council, 950 F. Supp. 2d at 243 (quoting Judicial Watch v. Dep't of Homeland Sec., 841 F. Supp. 2d 142, 153–54 (D.D.C. 2012)); see also Coastal States, 617 F.2d at 863); Fed. Trade Comm'n v. GlaxoSmithKline, 294 F.3d 141, 146 (D.C. Cir. 2002).

AIC claims that Defendants have failed to show that Document 7 contains confidential information, emphasizing that the D.C. Circuit has refused to apply the attorney-client privilege to "neutral, objective analyses of agency regulations," rather than "private information concerning the agency . . . [*e.g.,*] 'counseling[]' intended to assist the agency in protecting its interests."  Coastal States, 617 F.2d at 863.  The description Defendants provide in their Vaughn Index and the Court's own *in camera* review of the record, however, put Document 7 firmly on the "counseling" side of the line.  The Vaughn Index describes Document 7 as follows: "[A]n

ICE employee was seeking guidance from ICE attorneys regarding the processing of aliens during a worksite enforcement action . . . and an ICE attorney was providing a legal opinion to [*sic*] the question about the processing of aliens." Vaughn Index at 5. Defendants' briefs repeat this description practically word for word. See Mot. at 18; Reply at 15. While the records at issue in Coastal States consisted of legal memoranda interpreting agency regulations based on specific factual circumstances, which the panel compared to "question and answer guidelines which might be found in an agency manual," Coastal States, 617 F.2d at 858-59, 863, here the material reflects legal advice and recommendations regarding agency action. This kind of information is entitled to protection under the attorney-client privilege.

AIC further contends that Defendants have not established the confidentiality of Document 7 at the time of the communication. As the Court noted in its last decision in this matter, "The confidentiality of a communication is not something this Court is at liberty to assume," and documents must be disclosed unless the government can reasonably demonstrate that the information was "'supplied by [the agency] [to agency counsel] with the expectation of secrecy and was not known by or disclosed to any third party.'" Am. Immigration Council, 950 F. Supp. 2d at 244 (quoting Mead Data Cent., Inc. v. Dept. of Air Force, 566 F.2d 242, 254 (D.C. Cir. 1977)). Defendants have met that burden with respect to Document 7. The Court's *in camera* review of the record reveals a confidentiality notice at the bottom of the email in question that clearly reflects the parties' expectation that the discussion would remain confidential. The Vaughn entry for Document 7, moreover, states that the communications exclusively involved ICE employees. See Vaughn Index at 5 ("The emails involve ICE attorneys of a supervisory level[,] . . . ICE attorneys of a non-supervisory level[,] . . . and ICE employees in a non-attorney capacity.").

In sum, then, based on Defendants' descriptions and the Court's own examination of the record, Document 7 is protected by the attorney-client privilege. The Court will therefore grant Defendants' Motion with regard to it.

### 3. Exemption 7(E)

Defendants invoked Exemption 7(E) to redact portions of two of the documents at issue here: Document 1 and Document 10. See Opp. at 14-16; Vaughn Index. Exemption 7 authorizes the Government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" meets one of six requirements. 5 U.S.C. § 552(b)(7); see also Keys v. DOJ, 830 F.2d 337, 340 (D.C. Cir. 1987) ("[Exemption 7] exempts such documents from disclosure only to the extent that production of the information might be expected to produce one of six specified harms."). The fifth subparagraph – 7(E) – permits withholding where production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The agency must thus satisfy two requirements: First, the record must be compiled for law-enforcement purposes; and second, production must disclose either techniques and procedures for law-enforcement investigations or guidelines for law enforcement investigations that would risk circumvention of the law.

ICE is an investigative arm of DHS "tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises." 3d Law Decl., ¶ 66. AIC acknowledges ICE's "status as a law enforcement agency" and the deference the agency is due in invoking Exemption 7, see Opp. at 32, but it also

notes that "[agency] records are not law enforcement records [under FOIA] simply by virtue of the function that the [agency] serves." King v. DOJ, 830 F.2d 210, 229 (D.D.C. 1987). "[A] law-enforcement agency must still make a showing of 'law enforcement purposes' by providing a sufficient explanation that 'establish[es] a rational nexus between [the withholding] and one of the agency's law enforcement duties,' as well as a 'connection between an individual or incident and a possible security risk or violation of federal law.'" Am. Immigration Council, 950 F. Supp. 2d at 245 (quoting Campbell v. DOJ, 164 F.3d 20, 32 (D.C. Cir. 1998)).

While AIC concedes that most of Documents 1 and 10 were collected for law-enforcement purposes, it questions certain parts of both documents. For Document 1, AIC challenges those sections "relating to administrative processing of individuals [in contrast to] the portions related to investigation or arrest of noncitizens." Opp. at 32. AIC offers no argument for why the movement and control of persons detained in federal custody as the result of a law-enforcement operation should not be considered a law-enforcement activity, and the Court sees no reason to treat such procedures any differently from those related to investigations or arrests. Cf. Anderson v. Federal Bureau of Prisons, 806 F. Supp. 2d 121, 127 (D.D.C. 2011) (finding that Exemption 7 covered information withheld by Federal Bureau of Prisons regarding decisions on inmate transfers intended to prevent future violence). For Document 10, AIC says that "[p]arts of [the record] are less clearly marked, and, as a result, AIC challenges a larger portion of those redactions." Opp. at 32. AIC does not explain the substance of those challenges, however, and so the Court will treat their objection as abandoned. The Court therefore finds that both Documents 1 and 10 were collected for law-enforcement purposes.

Moving on to Exemption 7(E)'s second requirement, AIC claims that Defendants have failed to show that full release of Documents 1 and 10 "would disclose techniques and

procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  Opp. at 33 (quoting 5 U.S.C. § 552(b)(7)(E)).  As the Court noted in its last decision on this matter, courts typically have found that the government carries its evidentiary burden on this point when it provides:

> (1) a description of the technique or procedure at issue in each document, (2) a reasonably detailed explanation of the context in which the technique is used, (3) an exploration of why the technique or procedure is not generally known to the public, and (4) an assessment of the way(s) in which individuals could possibly circumvent the law if the information were disclosed.

Am. Immigration Council, 950 F. Supp. 2d at 247.  AIC argues that Defendants have not carried that burden on several fronts.

First, AIC contends that Defendants have neglected to categorize certain redacted material as a technique, a procedure, or a guideline – for instance, the "premise descriptions" in Document 1 and "the particulars of each phase of the operation" in Document 10.  Vaughn Index at 2, 7.  AIC asks too much.  Insofar as premise descriptions and operation phases are part and parcel of the law-enforcement techniques, procedures, and guidelines at issue – and the Court's in camera review of the materials convinces it that, in this case, they are – a FOIA defendant need not tag them with specific labels.

Next, AIC challenges the redaction of Document 1 on the ground that it does not reflect law enforcement "investigations" or "prosecutions."  See Cowsen-El v. DOJ, 826 F. Supp. 532, 534 (D.D.C. 1992).  AIC notes that the redacted section of Document 1 is titled "Administrative Processing" and claims that "even if these records were compiled for a law enforcement function and include agency procedures, techniques, or guidelines, they should not be withheld unless Defendants also show that all of the procedures relate to investigations or prosecutions."  Opp. at

36.  AIC infers too much from just two words.  As explained in Defendants' <u>Vaughn</u> Index and pleadings – and confirmed by the Court's *in camera* review – Document 1 is a "Draft ICE Operation Plan for SAC Chicago," <u>Vaughn</u> Index at 2, that "describes the usage or non-usage of undercover agents and highly specific details related to, among other things, how law enforcement will contact suspects, the composition of a mobile command center, codes used, and how to divide law enforcement teams under specific circumstances."  Reply at 19.  Clearly, the enforcement of immigration laws relates to law-enforcement "investigations" and "prosecutions," as does the detention of those suspected of violating such laws.  This attack on Defendants' withholding of Document 1 is therefore unavailing.

Finally, AIC questions whether Defendants have shown that the redacted materials are not generally known to the public.  Although Defendants do not specifically address the issue in their <u>Vaughn</u> Index or pleadings, their descriptions of Documents 1 and 10 as a "Draft ICE Operation Plan for SAC Chicago" and an "Enforcement Operation Plan for SAC St. Paul," <u>Vaughn</u> Index at 2, 7, which "relate[] to either ICE enforcement actions against employers violating federal law by employing unauthorized workers or [to] the manner and method in which those detained for allegedly violating federal immigration law are housed, when they are searched for contraband and weapons, and how specific enforcement actions are carried out by ICE special agents,"  Reply at 17, convinces the Court that, on their face, these records contain information not generally known to the public.  This inference is further bolstered by the Court's own *in camera* review of the materials.

In sum, then, the Court concludes that Defendants properly redacted Documents 1 and 10 under FOIA Exemption 7(E).  It will therefore grant their Motion with regard to these two documents.

4. *Segregability*

The last issue that the Court must address is segregability.  FOIA requires that "[a]ny reasonably segregable portion of a record  . . . be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data, 566 F.2d at 260.  Still, an agency is not obligated to segregate non-exempt material if "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value."  Neufeld v. IRS, 646 F.2d 661, 666 (D.C. Cir. 1981), overruled on other grounds by Church of Scientology of California v. IRS, 792 F.2d 153 (D.C. Cir. 1986).

While the Government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013), this presumption of compliance does not obviate its obligation to carry its evidentiary burden and fully explain its decisions on segregability. See Mead Data Cent., 566 F.2d at 261.  The agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks omitted); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining Government affidavits explained nonsegregability of documents with "reasonable specificity").  "In making a determination as to segregability . . . a district court judge 'may examine the contents of . . . agency records *in camera*' . . . . This Circuit has interpreted this language to give district court judges broad discretion in determining whether *in camera* review is appropriate."  Id. at 577-78 (citations omitted).

In the Court's prior decision in this case, it did not reach the segregability issue, but "[t]o aid in the preparation of Defendants' further explanations of the withholdings," it "made explicit this Circuit's precedent on segregability of nonexempt information." <u>Am. Immigration Council</u>, 950 F. Supp. 2d at 248.  The Court explained that "[o]nce Defendants have specifically identified the exempted portions of their records and described them in accordance with the requirements set out above . . . they must also provide descriptions of excerpts deemed to be non-segregable, with explanations as to those decisions." <u>Id.</u>  It added that "Defendants' current conclusory assertion that ICE 'has reviewed each record line-by-line to identify information exempt from disclosure . . . [finding that] all information not exempted . . . was correctly segregated,' . . . will not suffice to discharge this burden." <u>Id.</u>

As AIC notes, Defendants have again failed to follow the Court's express instructions on this matter.  Their opening brief parrots almost exactly the same language that this Court previously described as insufficient: "[ICE] reviewed each record line-by-line to identify information exempt from disclosure . . . to ensure that all non-exempt information was released." Mot. at 22.  The only new information that Defendants have provided is their rather meek assertion that "as demonstrated by the <u>Vaughn</u> Index and the Law Declarations, ICE went to great lengths to describe in detail the exact material which was withheld (including time stamps of e-mails) to indicate what was withheld and the reasons the information was statutorily exempt." Reply at 20.  The Court specifically stated in its last decision, however, that those descriptions are not sufficient.  Defendants must also "provide descriptions of excerpts deemed to be non-segregable, with explanations as to those decisions." <u>Am. Immigration Council</u>, 950 F. Supp. 2d at 248.  Defendants' <u>Vaughn</u> Index and declarations are devoid of such information.

Fortunately for Defendants, however, the Court's *in camera* review of the materials suffices to persuade it that there are no segregability problems in this case. Documents 2, 3, 4, 7, and 8 feature targeted redactions, with paragraphs and sentences clipped to remove exempt information, which suggests that Defendants made the required effort to segregate and disclose those portions that could be released. While Documents 1, 9, 10, and 11 present broader-brush redactions, the Court's examination of these records persuades it that all reasonably segregable information within has been released. The non-exempt portions of these documents that have been redacted "are inextricably intertwined with exempt portions" and they need not be further segregated. Mead Data, 566 F.2d at 260.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment. Summary judgment will be entered in favor of Defendants on their withholdings of Documents 1 through 11. A separate Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  March 5, 2014